**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT CLEVELAND**

| | |
|---|---|
| **JAMES W. GROVES and JUDITH BARTELL-GROVES**, individually and on behalf of all others similarly situated, 3915 Spokane Road Cleveland, OH 44109 | Case No. |
| | Judge |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| | **JURY DEMAND ENDORSED HEREON** |
| v. | |
| **NATIONSTAR MORTGAGE LLC, d/b/a RIGHTPATH SERVICING** c/o Corporation Service Company, Registered Agent 3366 Riverside Drive, Suite 103 Upper Arlington, OH 43221 | |
| Defendant. | |

Plaintiffs James W. Groves and Judith Bartell-Groves, individually and on behalf of all others similarly situated, by and through counsel, bring this action against Defendant Nationstar Mortgage LLC d/b/a RightPath Servicing and state as follows for their Class Action Complaint:

**PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiffs James W. Groves ("Mr. Groves") and Judith Bartell-Groves ("Mrs. Bartell-Groves") (collectively, "Plaintiffs") are each a natural person residing in Cuyahoga County, Ohio.

2.      Defendant Nationstar Mortgage LLC d/b/a RightPath Servicing ("Defendant" or "Nationstar") is a foreign limited liability company incorporated under the laws of the State of

Delaware that maintains its headquarters and principal place of business at 8950 Cypress Waters Blvd., Dallas, TX 75019.

3.  Nationstar does business in the state of Ohio and is licensed to do business in the state of Ohio as a foreign corporation.

4.  This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, as this action arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA")

5.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear the state law claims brought under the Ohio Residential Mortgage Licensing Act ("RMLA")— codified at R.C. 1322.01, *et seq*.

6.  Venue lies in this District pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## STATEMENT OF FACTS

### *FHA Mortgages and the Regulations of the HUD Secretary*

7.  Every residential mortgage loan that is insured by the Federal Housing Administration ("FHA"), including Plaintiffs' loan with Nationstar, contains substantially similar contractual provisions requiring lenders to comply with the rules and regulations promulgated by the Secretary ("Secretary") of the United States Department of Housing and Urban Development ("HUD"). Specifically, those security instruments provide, with substantial uniformity, as follows:

(a)  Default. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
(i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

* * *

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

*See*, copy of Plaintiffs' FHA-insured mortgage loan ("Plaintiffs' Mortgage"), attached as <u>Exhibit 1</u>.

8. Pursuant to 12 U.S.C. § 1715u(a), the Secretary has the authority to promulgate regulations concerning the loss mitigation options available to borrowers in default on their FHA-insured mortgage obligations. That statutory provision reads:

> Upon default or imminent default, as defined by the Secretary of any mortgage insured under this subchapter, mortgagees shall engage in loss mitigation actions for the purpose of providing an alternative to foreclosure (including but not limited to actions such as special forbearance, loan modification, preforeclosure sale, support for borrower housing counseling, subordinate lien resolution, borrower incentives, and deeds in lieu of foreclosure, as required, but not including assignment of mortgages to the Secretary under section 1710(a)(1)(A) of this title) or subsection (c), as provided in regulations by the Secretary.

12 U.S.C. § 1715u(a).

9. The Secretary's rules and regulations relative to the servicing of FHA-insured mortgage loans for single family homes—such as Plaintiff's Mortgage—are set forth in the FHA's *Single Family Housing Policy Handbook 4000.1* ("SF Handbook").

10. The SF Handbook requires a mortgagee to ensure all mortgages insured by the FHA that are delinquent are serviced in accordance with FHA requirements and all applicable laws. SF Handbook 4000.1 at III.A.2.a.ii, Revision No. 032719, March 14, 2016.

11. The Secretary and HUD limit mortgagees' rights in the case of payment defaults through their policies pertaining to loss mitigation as contained in the SF Handbook. *See, e.g.,*

Plaintiffs' Mortgage, ¶ 9(d); SF Handbook at III.A.2.r.ii(C)(1)(a)-(b) (requiring mortgagees to perform a complete review of borrowers' applications for loss mitigation options before proceeding to a foreclosure sale).

12.     Due to the Presidentially-Declared COVID-19 National Emergency, the Secretary and HUD updated the SF Handbook to require mortgagees to review borrowers for certain home retention options without a Borrower having to submit a complete loss mitigation application. *See, inter alia*, SF Handbook at III.A.2.o.

13.     One such category of loss mitigation options is referred to as "COVID-19 Recovery Loss Mitigation Options" ("COVID-19 Recovery Options") which were to "provide Borrowers impacted, directly or indirectly, by COVID-19 with options to bring their Mortgage current and *may reduce* the [Principal and Interest ("P&I")] portion of their monthly Mortgage Payment to reduce the risk of re-default and assist in the broader COVID-19 recovery." *See*, SF Handbook at III.A.2.o.iii.(A), *et seq.* (emphasis added).

14.     Mortgagees must review all borrowers for COVID-19 Recovery Options:

(a)     If the borrower was in a COVID-19 forbearance, no later than the earlier of one hundred twenty (120) days of the borrower's completion or expiration of a COVID-19 forbearance plan;

(b)     If the borrower was not in a COVID-19 forbearance, when the borrower is 90 or more days delinquent and the borrower affirms they have been negatively impacted by COVID-19.

*See*, SF Handbook at III.A.2.o.iii.(A)(1)-(2).

15.     Of note, "The COVID-19 Recovery Options are not incentivized for Mortgagees" meaning that, unlike with other loss mitigation options, a mortgagee does not receive any incentive

from HUD for offering and entering borrowers into COVID-19 Recovery Options. *See*, SF Handbook at III.A.2.o.iii.(A).

16.      In reviewing borrowers for COVID-19 Recovery Options, the first step in the "waterfall" is to see if a borrower qualifies for a "Standalone Partial Claim" to reinstate their mortgage and resume making their contractual mortgage payments. *See*, SF Handbook at III.A.2.o.iii.(C)(1).

17.      If a borrower does not qualify for a "Standalone Partial Claim", however, "the Mortgagee *must review* the Borrower for the COVID-19 Recovery Modification" ("Recovery Modification"). *See*, SF Handbook at III.A.2.o.iii.(C)(2).

18.      The Recovery Modification is a 360-month Loan Modification, which must include a Partial Claim, if Partial Claim funds are available. The COVID-19 Recovery Modification ***targets*** *a reduction in the P&I portion of the Borrower's monthly Mortgage Payment*" aiming to achieve a "25 percent reduction to the P&I portion of the Borrower's monthly Mortgage Payment" (the "Target Payment"). *See*, SF Handbook at III.A.2.o.iii.(C)(2)(a).

19.      The ***only*** eligibility requirements for a Recovery Modification are that the mortgagee must ensure that: (1) The borrower indicates they have the ability to make the modified monthly payment; and (2) the borrower resides in the property secured by the mortgage. *See*, SF Handbook at III.A.2.o.iii.(C)(2)(b).

20.      There are a series of steps that a mortgage must apply in attempting to reach the Target Payment and once the Target Payment is achieved, there is no need to utilize any subsequent steps:

(a) "Step 1 – Calculate Partial Claim Availability… The Mortgagee must determine the maximum Partial Claim amount available for a COVID-19 Recovery Modification."

(b) "Step 2 – Arrearages… The Mortgagee must calculate the arrearages… The Mortgagee must ensure that all Late Charges and penalties are waived. Mortgagees are not required to waive Late Charges and penalties, if any, accumulated prior to March 1, 2020."

(a) "Step 3 – Modify the Rate and Term of the Mortgage… The Mortgagee must then extend the term to 360 months and calculate the modified Mortgage Payment. The interest rate of the modified Mortgage is no greater than the most recent [Primary Mortgage Market Survey ("PMMS") Rate for 30-year fixed rate conforming Mortgages (U.S. average), rounded to the nearest one-eighth of 1 percent (0.125 percent) as of the date the Borrower is offered a COVID-19 Recovery Modification."

(b) "Step 4 – Principal Deferment… If the target payment is not achieved, the Mortgagee must apply the remaining Partial Claim funds, if any, as a principal deferment, to achieve the target payment with the modified Mortgage."

*See*, SF Handbook at III.A.2.o.iii.(C)(2)(c).

21.     Even if the Target Payment is not achieved through the aforementioned steps, "Step 5" requires that "the Mortgagee **must offer** the Borrower **the lowest monthly P&I payment achieved under the COVID-19 Recovery Modification**. If the Borrower affirms that they can make the offered payment, then the Mortgagee must complete that option." *See*, SF Handbook at III.A.2.o.iii.(C)(2)(c).

22. In short, while a Recovery Modification requires a mortgagee to attempt to achieve the Target Payment, it is not required to achieve the Target Payment or achieve *any reduction* in the P&I portion of a borrower's monthly payment—while a reduction in the P&I portion of a borrower's monthly payment is attempted, it is not *required* in order for a mortgagee to offer a Recovery Modification.

23. Again, "COVID-19 Recovery Options" are designed to "provide Borrowers impacted, directly or indirectly, by COVID-19 with options to bring their Mortgage current and *may reduce* the P&I" portion of their monthly Mortgage Payment to reduce the risk of re-default and assist in the broader COVID-19 recovery." *See*, SF Handbook at III.A.2.o.iii.(A), *et seq.* (emphasis added).

***Regulation X and COVID-19 Related Amendments to 12 C.F.R. § 1024.41***

24. 12 C.F.R. § 1024.41 generally provides procedural guidelines to which a servicer must adhere when a borrower submits a loss mitigation application.

25. Effective August 21, 2021, the Bureau of Consumer Financial Protection, amended 12 C.F.R. § 1024.41 to include, *inter alia*, the following subsection.

**(vi) Certain COVID-19-related loan modification options.**
**(A)** Notwithstanding paragraph (c)(2)(i) of this section, a servicer may offer a borrower a loan modification based upon evaluation of an incomplete application, provided that all of the following criteria are met:
**(1)** The loan modification extends the term of the loan by no more than 480 months from the date the loan modification is effective and, for the entire modified term, does not cause the borrower's monthly required principal and interest payment to increase beyond the monthly principal and interest payment required prior to the loan modification.
* * *
**(B)** Once the borrower accepts an offer made pursuant to paragraph (c)(2)(vi)(A) of this section, the servicer is not required to comply with paragraph (b)(1) or (2) of this section with regard to any loss mitigation application the borrower submitted prior to the servicer's offer of the loan modification described in paragraph (c)(2)(vi)(A) of this section.

12 C.F.R. § 1024.41(c)(2)(vi).

26.     Simply stated, 12 C.F.R. § 1024.41(c)(2)(vi), allows for an exception to a servicer's obligation to follow the procedures of 12 C.F.R. § 1024.41 for a borrower's submitted loss mitigation application if a servicer offers and the borrower accepts a loan modification that meets the criteria listed in 12 C.F.R. § 1024.41(c)(2)(vi)(A)(1)-(5), which includes a reduction in the P&I portion of the borrower's payment. See, 12 C.F.R. § 1024.41(c)(2)(vi).

27.     12 C.F.R. § 1024.41(c)(2)(vi) merely offers a safe harbor from compliance with the procedures of 12 C.F.R. § 1024.41 if certain loan modification options are offered and accepted, but it does not put any restrictions on the terms of any loss mitigation option that may be offered to a borrower—nor does any other provision of 12 C.F.R. § 1024.41.

28.     Servicers are permitted to offer loss mitigation options that do not meet the criteria listed in 12 C.F.R. § 1024.41(c)(2)(vi)(A)(1)-(5), it simply means that if it does so, it must continue to comply with the remainder of the obligations imposed by 12 C.F.R. § 1024.41 in relation to any submitted loss mitigation application.

### Plaintiffs' and Class Members' Loans

29.     Nationstar is the servicer of Plaintiffs' Loan and the Late Fee Class (defined *infra*) members' notes, and mortgages on real property that secure those notes (collectively, the "loans").

30.     Plaintiffs' Loan and the Class members' loans contain substantially similar language, as they were drafted using standardized templates, specifically, the model uniform instruments required by the FHA.

31.     Nationstar, is a mortgage servicer, as defined by R.C. 1322.01(BB), as it is an entity that "for itself or on behalf of the holder of a mortgage loan, holds the servicing rights, records mortgage payments on its books, or performs other functions to carry out the mortgage holder's

obligations or rights under the mortgage agreement including, when applicable, the receipt of funds from the mortgagor to be held in escrow for payment of real estate taxes and insurance premiums and the distribution of such funds to the taxing authority and insurance company."

32.     Nationstar, as a mortgage servicer, is required to be registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322.

33.     Nationstar is a registrant under R.C. 1322, as the Ohio Department of Commerce, Division of Financial Institutions has issued it certificates of registration, License Nos. RM.850005.000,     RM.850005.001-BR,     RM.850005.006-BR,     RM.850005.010-BR, RM.850005.011-BR     RM.850005.012-BR     RM.850005.013-BR,     RM.850005.014-BR, RM.850005.015-BR, RM.850005.016-BR and RM.850005.018-BR. R.C. 1322.01(HH).

34.     Plaintiffs and Class members are "buyers" as defined by R.C. 1322.01(I), as they are individuals whose loans are serviced by a mortgage servicer, Nationstar.

35.     When Nationstar acquired the servicing rights to Plaintiffs' Loan and FDCPA Subclass (defined *infra*) members' loans, Nationstar asserted that Plaintiffs and FDCPA Subclass members were in default of their obligations thereunder.

36.     Nationstar is a "debt collector" as defined by 15 U.S.C. § 1692a(6), as it regularly engages, or attempts to engage, in the collection of "debts", and it regularly collects debts owed or due, or asserted to be owed or due, to another for which the primary purpose is for personal, family, or household use, including Plaintiffs' and FDCPA Subclass members' loans.

### *Nationstar's Improper Denials of Eligibility for Recovery Modifications*

37.     Plaintiffs and each Class Member were impacted, directly or indirectly, by the Presidentially-Declared COVID-19 National Emergency, fell delinquent on their mortgages.

38.     Plaintiffs and each Class Member subsequently requested loss mitigation assistance from Nationstar.

39.     Nationstar reviewed Plaintiffs and each Class Member for eligibility for COVID-19 Recovery Options.

40.     Nationstar denied Plaintiffs and each Class Member for eligibility for a Recovery Modification claiming that there was an insufficient reduction in the P&I portion of Plaintiffs' and each Class Member's monthly payment.

41.     As discussed, *supra*, there is no requirement that the P&I portion of a borrower's payment be reduced through a Recovery Modification as the only eligibility requirements are that: (1) The borrower indicates they can make the modified monthly payment; and (2) the borrower resides in the property secured by the mortgage. *See*, SF Handbook at III.A.2.o.iii.(C)(2)(b).

42.     Nationstar's denial of Plaintiffs and each Class member for eligibility for a Recovery Modification was improper as each such denial was based upon an eligibility requirement that does not exist.

43.     Nationstar's improper denial of Plaintiffs and each Class member for eligibility for a Recovery Modification based upon false pretenses constitute a failure to act in compliance with the regulations of the HUD Secretary and evidence a lack of reasonable skill, care, and diligence, as well as a failure to act good faith and with fair dealing with respect to each of the loans.

44.     Nationstar, in sending correspondence stating or otherwise communicating to Plaintiffs and each Class member that they were ineligible for a Recovery Modification based upon false pretenses, engaged in conduct constituting dishonest dealings and misrepresentations.

45.     As COVID-19 Recovery Options are not incentivized as other loss mitigation options permitted by the regulations of the HUD Secretary, it is possible that Nationstar is steering

borrowers away from options such as Recovery Modifications in order to obtain incentives for placing borrowers in other loss mitigation options.

46.     Nationstar's conduct has caused Plaintiffs and Class members to suffer significant pecuniary and non-pecuniary damages.

47.     Plaintiffs and Class members were each denied for a Recovery Modification at the market rate of the time of their review and lost the opportunity for such a loan modification.

48.     Plaintiffs and Class members seeking to obtain a loan modification or other loss mitigation relief, will have to incur costs, expenses, and lost time in submitting loss mitigation applications that otherwise would not have been and should not have been necessary.

49.     Presuming Plaintiffs and Class members can subsequently obtain a loan modification, any such modification is going to have much less favorable terms than the Recovery Modification to which each was entitled. As interest rates have been steadily on the rise, roughly doubling, if not more, from this time last year, any delay in obtaining a loan modification will almost certainly result in any subsequent modification having a higher rate for which Plaintiffs and Class Members will be responsible to pay. Moreover, any delay will result in further increased amounts for accrued interest, escrow advances, and other such items, to be capitalized onto the loans through these modifications and Plaintiffs and Class members will have to pay these amounts back with interest.

50.     Plaintiffs and Class members, if unable to qualify for a subsequent loan modification, will remain at risk of foreclosure and of the loss of their homes and are likely to incur costs and legal fees to defend against foreclosure actions initiated in court and file for bankruptcy protection.

51.     Plaintiffs and Class members have further been caused to suffer severe emotional distress driven by Nationstar's actions and by the tangible fear that Nationstar's failure to offer them a Recovery Modification as required by the regulation of the HUD Secretary, would result in the loss of their homes to foreclosure sale.

## FACTS RELEVANT TO PLAINTIFFS

52.     On May 2, 2005, Mr. Groves executed a mortgage note payable to non-Party Allied Home Mortgage Capital Corporation in the amount of $108,005.00 ("Plaintiffs' Note") which was secured by a mortgage on Plaintiffs' principal place of residence which was executed by Plaintiffs ("Plaintiffs' Mortgage") (collectively, "Plaintiffs' Loan"). *See generally*, Exhibit 1; *see*, Plaintiffs' Note, ¶ 1; *see generally*, Plaintiffs' Mortgage.

53.     Plaintiffs fell upon financial hardships and defaulted on their obligations pursuant to Plaintiffs' Loan.

54.     Foreclosure proceedings were initiated against Plaintiffs on or about December 16, 2019, in the Cuyahoga County Court of Common Pleas, Case No. CV 19 926670 (the "Foreclosure").

55.     Plaintiffs retained counsel to defend their interests in the Foreclosure.

56.     Nationstar obtained servicing rights to Plaintiffs' Loan effective May 31, 2022. *See*, correspondence dated June 14, 2022, attached as **Exhibit 2**.

57.     At the time Nationstar obtained servicing rights to Plaintiffs' Loan, Nationstar claimed that the Loan was in default for the payment due and owing for April 1, 2019 and thereafter.

58.     Plaintiffs, like millions of others, were impacted by COVID-19.

59.     On July 13, 2022, Plaintiffs, through counsel, contacted Nationstar to request loss mitigation options pursuant to the COVID-19 Recovery Options.

60.     Nationstar sent correspondence dated July 14, 2022, confirming that Plaintiffs sought to be reviewed for eligibility for "COVID-19 mortgage assistance solutions" and that Nationstar had "all of the information" needed to review Plaintiffs' eligibility for the same. *See*, a copy of such correspondence, attached as __Exhibit 3__.

61.     Nationstar sent correspondence dated August 11, 2022, stating that that the Borrowers were denied for a Recovery Modification, which Nationstar identified as an "FHA Disaster Modification" because of an "Insufficient Monthly Payment Reduction", specifically stating "[t]he required modification terms would result in a principal and interest mortgage payment that is greater than your current principal and interest payment and therefore *does not meet the requirements of the program*" (emphasis added) (the "Denial"). *See*, a copy of the Denial, attached as __Exhibit 4__.

62.     As the Denial improperly claimed that the Recovery Modification required a reduction in the P&I portion of Plaintiffs' monthly payments, Plaintiffs, through counsel, sent correspondence to Nationstar dated August 19, 2022, appealing the Denial, stating that it is believed Nationstar provided inaccurate information regarding the eligibility requirements for a Recovery Modification, and requesting that Nationstar provide the section of SF Handbook that states that a reduction in the P&I portion of Plaintiffs' monthly payments is required to qualify for a Recovery Modification (the "Appeal"). *See*, a copy of the Appeal, attached as __Exhibit 5__.

63.     Nationstar sent correspondence dated September 1, 2022, in response to the Appeal (the "Response"). *See*, a copy of the Response, attached as __Exhibit 6__.

64.     Through the Response, Nationstar stated that the Denial was correct, as the P&I

portion of the modified payment under a Recovery Modification would not have been reduced:

> Current P&I: $486.97
> Capped Unpaid Principal Balance (UPB): $126,202.74
> Partial Claim: $14,696.50
> Interest bearing UPB: $111,506.24
> Interest Rate: 5.25%
> Amortization duration: 480 months
> Proposed P&I: $556.27

*See*, Exhibit 6.

65.     Further, Nationstar stated:

> Per Consumer Financial Protection Bureau (CFPB) guidelines, Reg X -
> 1024.41(c)(2)(vi), without a complete application, we cannot offer the borrower a
> modification that would increase their P&I payment. The borrower can provide a
> complete modification application to be considered for the standard FHA-Home
> Affordable Modification Program (HAMP) modification assistance.

*See*, Exhibit 6.

66.     That is, Nationstar not only misinterprets the SF Handbook regarding the eligibility

requirements for a Recovery Modification, but also misinterprets 12 C.F.R. § 1024.41(c)(2)(vi) in

claiming that such provision of Regulation X somehow prohibits Nationstar from offering certain

loss mitigation options.

67.     The plain language of 12 C.F.R. § 1024.41(c)(2)(vi), as discussed *supra*, merely

offers a safe harbor from compliance with the procedures of 12 C.F.R. § 1024.41 if certain loan

modification options are offered and accepted, but it does not put any restrictions on the terms of

any loss mitigation option that may be offered to a borrower—nor does any other provision of 12

C.F.R. § 1024.41.

68.     Per the SF Handbook, Nationstar was required to offer a Recovery Modification to

Plaintiffs with the proposed terms contained in the Response. Had Nationstar offered such a

modification, Plaintiffs had the ability and desire to accept the same and fulfill their payment obligation thereunder which would have cured the default on Plaintiffs' Loan.

69.     Due to Nationstar's conduct, Plaintiffs have not yet obtained a loan modification and remain at imminent risk of a foreclosure judgment and the sale of their home.

70.     Nationstar's improper actions caused Plaintiffs to suffer from actual and proximate damages including, but not limited to:

(a) Legal fees, costs, and expenses to submit the Appeal in an attempt to have Nationstar mitigate the harm caused to Plaintiffs to which they did not receive a proper response as it contained misinformation and misrepresentations and as the problem continues to persist;

(b) The lost opportunity to obtain a Recovery Modification at an interest rate of 5.25% as the PMMS Rate for 30-year fixed rate conforming Mortgages (U.S. average) is now significantly higher;

(c) Legal fees, costs, and expenses related to the continued defense of the Foreclosure;

(d) Significant delay in the loss mitigation process and rehabilitation of their credit;

(e) Accrued interest, fees and charges imposed on the Loan including default servicing related fees since the issuance of the Denial for which Plaintiffs are personally obligated or which otherwise negatively impacts any equity in the Home to which they are entitled; and,

(f) Severe emotional distress driven by Nationstar's failure to properly handle their review of Plaintiffs' eligibility for a Recovery Modification and continued misrepresentations regarding the same and by justified fear that such blatant indifference to improper actions on would result in the sale of the Home at a

foreclosure sale which has resulted in frustration, loss of sleep, anxiety, depression,

embarrassment, and other significant emotional distress.

## CLASS ACTION ALLEGATIONS

71.     **Class Definition**: Plaintiffs bring this action pursuant to Fed. Civ. R. 23 on behalf

of a class of similarly situated individuals and entities (the "Class"), defined as follows:

> All loan borrowers in the State of Ohio, during the applicable statute of limitations
> period, (1) who have mortgage loans secured by residential real property, (2) whose
> mortgages are insured by the FHA, (3) whose mortgage loans are serviced by
> Nationstar, (4) who sought loss mitigation relief due to direct or indirect impact
> from the Presidentially-Declared COVID-19 National Emergency, and (5) who
> were denied eligibility for a Recovery Modification because the P&I portion of
> their monthly mortgage payment would not decrease.

> Excluded from the Class are: (1) Defendant, Defendant's agents, subsidiaries,
> parents, successors, predecessors, and any entity in which Defendant or their
> parents have a controlling interest, and those entities' current and former
> employees, officers, and directors; (2) the Judge to whom this case is assigned and
> the Judge's immediate family; (3) any person who executes and files a timely
> request for exclusion from the Late Fee Class; (4) any persons who have had their
> claims in this matter finally adjudicated and/or otherwise released; and (5) the legal
> representatives, successors and assigns of any such excluded person.

72.     **FDCPA Subclass Definition**: Plaintiff also brings this action pursuant to Ohio Civ.

R. 23 on behalf of a subclass of similarly situated individuals and entities ("the FDCPA Subclass"),

defined as follows:

> All loan borrowers in the State of Ohio, during the applicable statute of limitations
> period, (1) who have mortgage loans secured by residential real property, (2) whose
> mortgages are insured by the FHA, (3) whose mortgage loans are serviced by
> Nationstar, (5) whose mortgage loans were in default at the time Nationstar
> obtained servicing rights to the same, (5) whose loans are not owned in whole or in
> part by Nationstar, (6) who sought loss mitigation relief due to direct or indirect
> impact from the Presidentially-Declared COVID-19 National Emergency, and (7)
> who were denied eligibility for a Recovery Modification because the P&I portion
> of their monthly mortgage payment would not decrease.

> Excluded from the FDCPA Subclass are: (1) Defendant, Defendant's agents,
> subsidiaries, parents, successors, predecessors, and any entity in which Defendant
> or their parents have a controlling interest, and those entities' current and former

employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the FDCPA Subclass; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

73.     **Numerosity and Ascertainability**: Upon information and belief, the Class and the FDCPA Subclass (collectively, the "Classes") are each comprised of more than forty (40) members, such that the Classes are so numerous that joinder of all members is impractical. This conclusion is reasonable because as of July 20, 2022, Nationstar was the largest nonbank home loan servicer in the United States and the fourth largest servicer overall.[1] Moreover, as the loss mitigation at issue centers around individuals impacted by the COVID-19 pandemic which affected nearly every family in the country, if not the world, it is expected that a higher percentage of borrowers than would be typical are loss mitigation relief for their FHA Loans. The exact number of members in the Classes is presently unknown and can only be ascertained through discovery. Class members can easily be identified through Defendant's records or by other means.

74.     **Commonality and Predominance:** There are questions of law and fact common to the proposed Classes that predominate over any individual questions. Simply put, Nationstar improperly denied Plaintiffs and Class members for Recovery Modifications based on non-existent requirements and a misinterpretation of 12 C.F.R. § 1024.41(c)(2)(vi) and Plaintiffs and Class Members were harmed as a result. All members of the FDCPA Subclass have in common that their loans were in default at the time Nationstar obtained servicing rights to the same. There are questions of law and fact common to the proposed Classes that predominate over any individual questions, including:

---

[1] https://money.usnews.com/loans/mortgages/reviews/mrcooper-mortgage (last accessed November 14, 2022).

(a) Whether Nationstar improperly denied Plaintiffs and Class Members for eligibility for Recovery Modifications due to the P&I portion of their monthly mortgage payment not decreasing;

(b) Whether Nationstar misrepresented the eligibility requirements for Recovery Modifications to Plaintiffs and Class members in claiming that the P&I portion of their monthly mortgage payment would need to decrease to qualify for a Recovery Modification;

(c) Whether Plaintiffs and Class members suffered actual damages, and the measure and amount of those damages; and,

(d) Whether Plaintiffs and Class members are entitled to recover statutory damages.

75. **Typicality**: Plaintiffs' claims are typical of the claims of the Classes. On information and belief, Plaintiffs' and Class members' loans contain substantially similar language, as they were drafted using standardized templates or uniform instruments common to all loans insured by the FHA, or contain substantially similar language to such documents. As such, Plaintiffs and Class members were subjected to and affected by a uniform course of conduct; specifically, Nationstar's improper denial of the loans for eligibility for Recovery Modifications.

76. **Adequacy**: Plaintiffs will adequately represent the interests of the Classes and d0 not have adverse interests to the Classes. Plaintiffs' counsel has extensive experience litigating consumer class actions.

77. **Superiority**: A class action is the superior method for the quick and efficient adjudication of this controversy. If individual members of the Classes prosecuted separate actions, it may create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct.

## COUNT I:
## DECLARATORY JUDGMENT
### (28 U.S.C. §§ 2201, *et seq.*)
### (On behalf of Plaintiffs and the Class)

78.     Plaintiffs repeat and reallege paragraphs 1 through 77 with the same force and effect as though fully set forth herein.

79.     At all relevant times, there was in effect the Declaratory Judgment Act ("DJA"), 28 U.S.C. §2201(a), which states, in relevant part:

> In a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

80.     Plaintiffs, individually, and on behalf of the Class, seek an order declaring that neither the regulations of the HUD Secretary nor 12 C.F.R. § 1024.41(c)(2)(vi) prohibits a servicer from offering a Recovery Modification if the P&I portion of their monthly mortgage payment would not decrease under such a modification.

81.     The controversies presented in this case are definite and concrete and affect the adverse legal interests of the parties. Plaintiffs and Class members contend that, pursuant to the regulations of the HUD Secretary, and regardless of 12 C.F.R. § 1024.41(c)(2)(vi), they should have been offered Recovery Modifications when Nationstar reviewed their eligibility for the same. In contrast, Defendant has repeatedly contended that it is prohibited from offering Recovery Modifications if the P&I portion of their monthly mortgage payment would not decrease under such a modification. Accordingly, this case will determine the legal scope of Defendant's obligations to Plaintiffs and Class members, as well as further individuals who may seek such loss mitigation relief moving forward.

82.     There is an actual controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment because Defendant has denied and will continue to improperly deny borrowers for Recovery Modifications without any proper justification when such a modification may be the only way for a borrower to remain in their home after having been impacted by the COVID-19 pandemic.

83.     If the Court were to deny Plaintiffs' and Class members' request for declaratory relief, this controversy will continue to exist, as Defendant will continue to wrongfully deny borrowers for Recovery Modifications and make misrepresentations as to the same in the guise of justifying such improper conduct. As such, the resolution of this controversy is contingent upon the declaration requested herein, and because Defendant refuses to fulfill its legal obligations to Plaintiffs and the Class.

84.     Based on the foregoing facts, the Court should declare the rights and other legal remedies pursuant to the terms of Plaintiffs' and Class members' loans.

## COUNT TWO:
## VIOLATIONS OF THE RMLA
## (R.C. 1322.01, *et seq.*)
## (On behalf of Plaintiffs and the Class)

85.     Plaintiffs repeat and reallege paragraphs 1 through 77 with the same force and effect as though fully set forth herein.

86.     On December 22, 2017, Ohio Governor John Kasich ("Kasich") signed into law Ohio House Bill 199 ("HB 199"), which made significant changes to the former Mortgage Brokers Act, R.C. 1322.01, *et seq.* HB 199 substantially broadened the scope of the statute, now renamed the Residential Mortgage Lending Act, to apply to mortgage lenders.

87.     On December 19, 2018, Kasich signed into law Ohio House Bill 489 ("HB 489"), to again broaden the scope of the RMLA to apply to mortgage servicers. HB 489 now defines

"mortgage servicer" and inserts the term into sections throughout Chapter 1322. HB 489's title specifically "require[s] registration of mortgage loan servicers."

88.     Nationstar is subject to the requirements of the RMLA and does not qualify for the exemptions listed in R.C. 1322.04.

89.     "No person ... shall act as a ... mortgage servicer ... without first having obtained a certificate of registration from the superintendent of financial institutions for the principal office and every branch office to be maintained by the person for the transaction of business as a ... mortgage servicer ... in this state." R.C. 1322.07(A).

90.     Nationstar is a mortgage servicer under the RMLA as it "holds the servicing rights, records mortgage payments on its books, or performs other functions to carry out the mortgage holder's obligations or rights under the mortgage agreement." R.C. 1322.01(BB).

91.     Nationstar, as a mortgage servicer, is required to be registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322.

92.     Nationstar is a registrant under R.C. 1322, as the Ohio Department of Commerce, Division of Financial Institutions has issued its certificates of registration, License Nos. RM.850005.000,       RM.850005.001-BR,       RM.850005.006-BR,       RM.850005.010-BR, RM.850005.011-BR       RM.850005.012-BR       RM.850005.013-BR,       RM.850005.014-BR, RM.850005.015-BR, RM.850005.016-BR and RM.850005.018-BR. R.C. 1322.01(HH).

93.     Plaintiffs and each Class member are "buyers" as defined by R.C.1322.01(I), as they are individuals whose loans are serviced by a mortgage servicer, Nationstar

94.     A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, cannot engage in conduct that constitutes improper, fraudulent, or dishonest dealings. R.C. 1322.40(C).

95.     Nationstar violated R.C. 1322.40(C) by engaging in improper and dishonest dealings by failing to provide Plaintiffs and Class members with a Recovery Modification as required by the SF Handbook and by subsequently misrepresenting to Plaintiffs and Class members that they did not and could not qualify for the same because the P&I portion of their monthly mortgage payment would not decrease under such a modification.

96.     As a result of Nationstar's conduct, Nationstar is liable to Plaintiffs and Class members for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.52.

97.     A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, is required to comply with all duties imposed by other statutes or common law and: (2) Follow reasonable and lawful instructions from the buyer; (3) Act with reasonable skill, care, and diligence; [and] (4) Act in good faith and with fair dealing in any transaction, practice, or course of business in connection with the brokering or originating of any residential mortgage loan[.] R.C. 1322.45(A).

98.     A registrant, licensee, or person required to be registered or licensed under R.C. 1322 cannot waive or modify its duties under R.C. 1322.45(A). R.C. 1322.45(C).

99.     Nationstar violated R.C. 1322.45(A)(2) by failing to follow the Plaintiffs and Class members requests for COVID-19 Recovery Options, specifically for Recovery Modifications pursuant to the applicable guidelines, which resulted in Nationstar improperly denying Plaintiffs and Class members for the same.

100.    Nationstar violated R.C. 1322.45(A)(3) and (4) by failing to act with reasonable skill, care, and diligence and in good faith and with fair dealing when handling the Cannarellis' loss mitigation submissions, requests for information, and notices of errors, as discussed, *supra*.

101.     Nationstar violated R.C. 1322.45(A)(3) and (4) by failing to act with reasonable skill, care, and diligence and in good faith and with fair dealing through its by failing to provide Plaintiffs and Class members with a Recovery Modification as required by the SF Handbook and by subsequently misrepresenting to Plaintiffs and Class members that they did not and could not qualify for the same because the P&I portion of their monthly mortgage payment would not decrease under such a modification.

102.     As a result of Nationstar's conduct, Nationstar is liable to Plaintiffs and Class members for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.45(D).

**COUNT THREE:**
**VIOLATION OF THE FDCPA**
**(15 U.S.C. §§ 1692e and 1692f)**
**(On behalf of Plaintiffs and the FDCPA Subclass)**

103.     Plaintiff repeats and realleges paragraphs 1 through 77 with the same force and effect as though fully set forth herein.

104.     Plaintiffs and FDCPA Subclass members are each a "consumer" as they are each a natural person who is obligated or allegedly obligated to pay their loans. 15 U.S.C. § 1692a(3).

105.     The loans are each a "debt" as each is an obligation or alleged obligation of Plaintiffs' or FDCPA Subclass members to pay money arising out of a transaction primarily for personal, family, or household purposes—the financing of their homes. 15 U.S.C. § 1692a(5).

106.     Nationstar is a "debt collector" because it regularly collects or attempts to collect on the loans owed to creditors, such as U.S. Bank National Association, not in its individual capacity but solely as Trustee for Lakeview Trust 2022-EBO2, the owner of Plaintiffs' Loan. 15 U.S.C. § 1692a(6); *see also*, Exhibit 6.

107.    When Nationstar acquired the servicing rights to Plaintiffs' loans and FDCPA Subclass members', such loans were in contractual default. *See*, 15 U.S.C. § 1692a(6)(F)(iii).

108.    The FDCPA prohibits false, deceptive, or misleading representations in connection with the collection of any debt. 15 U.S.C. § 1692e. The FDCPA provides examples of conduct that violate the provision, such as prohibiting the use of:

> (a) False representations of the character, amount, or legal status of any debt (15 U.S.C. § 1692e(2)(A));
>
> (b) The threat to take any action that cannot legally be taken (15 U.S.C. § 1692e(5)); and,
>
> (c) False representations or deceptive means to collect or attempt to collect any debt (15 U.S.C. § 1692e(10)).

109.    Nationstar violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), and 1692e(10), by failing to provide Plaintiffs and Class members with a Recovery Modification as required by the SF Handbook and by subsequently misrepresenting to Plaintiffs and Class members that they did not and could not qualify for the same because the P&I portion of their monthly mortgage payment would not decrease under such a modification.

110.    The FDCPA prohibits the use of unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f.

111.    Nationstar violated 15 U.S.C. § 1692f through its actions in failing to provide Plaintiffs and Class members with a Recovery Modification as required by the SF Handbook and by subsequently misrepresenting to Plaintiffs and Class members that they did not and could not qualify for the same because the P&I portion of their monthly mortgage payment would not decrease under such a modification.

112.    Nationstar's actions have caused Plaintiffs and FDCPA Subclass members to suffer actual damages, further described, *supra*.

113.    As a result of Nationstar's actions, Nationstar is liable to Plaintiff and FDCPA Subclass members for actual damages, statutory damages, costs, and attorneys' fees. 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs James W. Groves and Judith Bartell-Groves, individually and on behalf of all others similarly situated, pray for an Order as follows:

A.  Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Class and the FDCPA Subclass, each as defined, *supra*;

B.  Designating Plaintiffs as representative of the Class and the FDCPA Subclass, and their undersigned counsel as Class Counsel;

C.  Entering judgment in favor of Plaintiffs, the Class, and the FDCPA Subclass and against Defendant;

D.  Entering a declaratory judgment that neither the regulations of the HUD Secretary nor 12 C.F.R. § 1024.41(c)(2)(vi) prohibits a servicer from offering a Recovery Modification if the P&I portion of their monthly mortgage payment would not decrease under such a modification;

E.  Awarding Plaintiffs, the Class, and the FDCPA Subclass their actual damages;

F.  Awarding Plaintiff and the Class punitive damages as allowed under the RMLA;

G.  Awarding Plaintiffs and the FDCPA Subclass their statutory damages as allowed under the FDCPA;

H.  Awarding Plaintiff, the Class, and the FDCPA Subclass attorneys' fees and costs, including interest thereon, as allowed or required by law; and,

I.  Granting all such further and other relief as this Court deems just and appropriate.

Respectfully submitted,

*/s/ Marc E. Dann*

Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Brian D. Flick (0081605)
Michael A. Smith, Jr. (0097147)
Dann Law
15000 Madison Avenue
Lakewood, OH 44107
Telephone: (216)373-0539
Facsimile: (216)373-0536
notices@dannlaw.com
*Counsel for Plaintiffs James W. Groves and Judith Bartell-Groves and the Putative Classes*

## JURY DEMAND

Plaintiffs James W. Groves and Judith Bartell-Groves, individually and on behalf of all others similarly situated hereby request a trial by jury on all issues.

*/s/ Marc E. Dann*

Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Brian D. Flick (0081605)
Michael A. Smith, Jr. (0097147)
Dann Law
*Counsel for Plaintiffs James W. Groves and Judith Bartell-Groves and the Putative Classes*