**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION (CLEVELAND)**

| | | |
|---|---|---|
| JAMES W. GROVES, *et al.,* | ) | CASE NO. 1:22-cv-02072 |
| | ) | |
| Plaintiffs, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | **DEFENDANT NATIONSTAR** |
| | ) | **MORTGAGE LLC DBA RIGHTPATH** |
| NATIONSTAR MORTGAGE LLC dba | ) | **SERVICING'S MOTION TO DISMISS** |
| RIGHTPATH SERVICING, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW Defendant Nationstar Mortgage LLC d/b/a RightPath Servicing ("Nationstar") by and through its undersigned counsel, and pursuant to Fed. R. Civ. Proc. 12(b)(6), and hereby moves this Court for an order dismissing the Class Complaint of James W. Groves and Judith Bartell-Groves, ("Plaintiffs"), for the reasons set forth in its Memorandum in Support of the Motion to Dismiss, which is incorporated herein in its entirety by reference.

1

Respectfully submitted,

/s/ James W. Sandy
James W. Sandy (0084246)
McGlinchey Stafford
3401 Tuttle Rd, Ste 200
Cleveland, OH 44122
Telephone: (216) 378-9914
Facsimile: (216) 803-6945
jsandy@mcglinchey.com
*Counsel for Defendant*
*Nationstar dba Rightpath Servicing*

## CERTIFICATE OF SERVICE

**I CERTIFY** that a true and accurate copy of the foregoing *Defendant Nationstar Mortgage LLC dba Rightpath Servicing's Motion to Dismiss* was served upon the following via the Court's electronic filing system this 23rd day of January 2023:

Marc E. Dann
Brian D. Flick
Michael A. Smith
Daniel M. Solar
notices@dannlaw.com
*Counsel for Plaintiffs*

/s/ James W. Sandy
James W. Sandy (0084246)

2

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION (CLEVELAND)**

| | | |
|---|---|---|
| JAMES W. GROVES, *et al.,* | ) | CASE NO. 1:22-cv-02072 |
| | ) | |
| Plaintiffs, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | **DEFENDANT NATIONSTAR** |
| | ) | **MORTGAGE LLC DBA RIGHT PATH** |
| NATIONSTAR MORTGAGE LLC dba | ) | **SERVICING'S MEMORANDUM IN** |
| RIGHTPATH SERVICING, | ) | **SUPPORT OF ITS MOTION TO** |
| | ) | **DISMISS** |
| Defendant. | ) | |

I.     INTRODUCTION AND BACKGROUND ................................................................... 1

II.    STANDARD OF LAW.............................................................................................. 4

III.   ARGUMENT.............................................................................................................. 5
       A.     There is no private right of action under the HUD Handbook. ........................... 5
              i.     HUD Handbooks are not regulations, binding, privately
                     enforceable, nor do they have the force and effect of law. ...................... 5
              ii.    Plaintiffs cannot make an end run around the settled law, and
                     thereby create a private right of action, by recasting their HUD
                     Handbook claim as a claim under the FDCPA or RMLA, or for
                     declaratory judgment. ............................................................................... 7
       B.     The HUD Handbook provision cannot be made actionable by
              incorporation into a contract. ............................................................................. 9
       C.     The HUD Handbook provisions are not incorporated into the mortgage
              documents. .......................................................................................................... 11
       D.     HUD Handbook provisions can be used only as a shield to defend against
              foreclosure, not as a sword as Plaintiffs seek to use it......................................... 13
       E.     Nationstar's actions were in compliance with the CFR which is controlling
              over the non-binding HUD guidelines. ............................................................... 14
       F.     The complaint fails to state a claim as to each asserted count.............................. 17

i

IV.    CONCLUSION.................................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AHEPA 91, Inc. v. United States HUD*,
    43 F. App'x 450 (2d Cir. 2002) ........................................................................15

*Alexander v. JPMorgan Chase Bank, N.A.*,
    Civil Action No. 3:12-CV-00081, 2013 U.S. Dist. LEXIS 110048 (S.D. Tex.
    Aug. 2, 2013) .................................................................................................9, 12

*Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*,
    704 F. Supp. 2d 177 (E.D.N.Y. 2010) ...............................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...................................4

*BAC Home Loans Servicing v. Taylor*,
    986 N.E.2d 1028 (Ohio Ct. App. (9th Dist.) 2013) ............................................13

*Bates v. JPMorgan Chase Bank, N.A.*,
    768 F.3d 1126 (11th Cir. 2014) .........................................................................10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ...................................4

*Estate of Brantner v. Ocwen Loan Servicing, LLC*,
    C17-582 TSZ, 2021 U.S. Dist. LEXIS 135170 (W.D. Wash. July 20, 2021) ..........9

*Bridgeport Towers, LLC v. Berrios*,
    BSRP079841, 2013 Conn. Super. LEXIS 2499 (Nov. 1, 2013)......................14, 15

*Burd v. Manley Deas Kochalski PLLC*,
    Case No. 2:13-cv-593, 2014 U.S. Dist. LEXIS 195192 (S.D. Ohio) (Mar. 31,
    2014) ................................................................................................................8, 17

*Cherry Creek Mortg., LLC v. Jarboe*,
    Civil Action No. 18-cv-00462-KLM, 2022 U.S. Dist. LEXIS 189231 (D.C.
    Colo. Oct. 17, 2022).............................................................................................5

*Cionci v. Wells Fargo Bank, N.A.*,
    C/A No. 9:21-cv-03175-BHH-MHC, 2022 U.S. Dist. LEXIS 169167
    (D.C.S.C. July 19, 2022).......................................................................................8

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*,
    648 F.3d 365 (6th Cir. 2011) ................................................................................4

iii

*Dawoudie v. Nationstar Mortg. LLC*,
 448 F. Supp. 3d 918 (N.D. Ill. 2020) ...................................................................6

*Dixon v. Wells Fargo Bank, N.A.*,
 Case No. 12-10174, 2012 U.S. Dist. LEXIS 137769 (E.D. Mich. Sept. 25,
 2012) .................................................................................................................10

*Donlon v. Evolve Bank & Trust*,
 2014 U.S. Dist. LEXIS 44765 (W.D. Tenn. Mar. 31, 2014) ...................................11

*Estep v. Manley Deas Kochalski, LLC*,
 552 F. App'x 502 (6th Cir. App. 2014) ..................................................................8

*Farquharson v. Citibank, N.A.*,
 664 F. App'x 793 (11 Cir. 2016) ........................................................................18

*Fed. Nat'l Mortg. Ass'n v. LeCrone*,
 868 F.2d 190 (6th Cir. 1989) ...............................................................................7

*Fed. Nat'l Mortg. Assoc. v. Ricks*,
 83 Misc. 2d 814 (Kings Cnty. Supreme Ct. Sept. 4, 1975) ...................................15

*Feldman v. U.S. Dep't of Housing & Urban Development*,
 430 F. Supp. 1324 (E.D. Pa. 1977) ......................................................................15

*Harris Cnty. Tex. v. MERSCORP Inc.*,
 791 F.3d 545 (5th Cir. 2015) .............................................................................17

*Hines v. MidFirst Bank*,
 No. 1:14-cv-00505-AT-AJB, 2014 U.S. Dist. LEXIS 189295 (N.D. Ga. Nov.
 26, 2014) .............................................................................................................6

*HSBC Bank USA, Natl. Tr. Co. v. Teagarden*,
 6 N.E.3d 678 (Ohio Ct. App. 2013).........................................................10, 11, 14

*Johnson v. Guardian Mgmt.*,
 535 F. Supp. 3d 1004 (Or. Dist. 2021)...................................................................6

*Kottmyer v. Maas*,
 436 F.3d 684 (6th Cir. 2006) ...............................................................................4

*Law v. Ocwen Loan Servicing, LLC*,
 587 F. App'x 790 (5th Cir 2014) (*per curiam*)......................................................6

*Lucas v. New Penn Fin., LLC*,
 Civil Action No. 17-cv-11472-ADB, 2019 U.S.Dist. LEXIS 15219 ......................19

iv

*M.B. Guran Co. v. City of Akron*,
    546 F.2d 201 (6th Cir. 1976) ...........................................................................7

*Mathews v. PHH Mortg. Corp.*,
    2020 U.S. Dist. LEXIS 161408 (N.D. Okla. Sept. 3, 2020) ...................................14

*Mezibov v. Allen*,
    411 F.3d 712 (6th Cir. 2005) ............................................................................5

*Muathe v. Wells Fargo Bank, N.A.*,
    Case No. 18-2064-CM-TJJ, 2019 U.S. Dist. LEXIS 24148 (D. Kan. Feb. 14,
    2019) .......................................................................................................18

*Pierre v. Nfg Hous.*,
    No. 2:21-cv-00300-GZS, 2021 U.S. Dist. LEXIS 224871 (D. Maine Nov. 22,
    2021) ........................................................................................................6

*Roberts v. Cameron-Brown Co.*,
    556 F.2d 356 (5th Cir. 1977) ............................................................................5

*Rossmann v. Lazarus*,
    2008 U.S. Dist. LEXIS 81701 (E.D. Va. Oct. 15, 2008) .........................................5

*Santoro v. CTC Foreclosure Serv. Corp.*,
    12 F. App'x 476 (9th Cir. 2001) ......................................................................18

*Smith v. Nationstar Mortg., LLC*,
    756 F. App'x 532 (6th Cir. 2018) .....................................................................18

*Tanner v. Wells Fargo Bank, N.A.*,
    Case No. 1:20-cv-01104, 2020 U.S. Dist. LEXIS 232717 (N.D. Ohio Dec. 10,
    2020) .............................................................................................. *passim*

*Thorpe v. Hous. Auth. of Durham*,
    393 U.S. 268 (1969) .......................................................................................6

*Wells Fargo Bank, N.A. v. Favino*,
    No. 1:10 CV 571, 2011 U.S. Dist. LEXIS 35618 (N.D. Ohio Mar. 31, 2011) .................10, 13

*Williams v. PHH Mortg. Corp.*,
    No. 4:20-cv-04018, 2021 U.S. Dist. LEXIS 150787 (S.D. Tex. Aug. 11, 2021) ...............9, 17

**Statutes**

28 U.S.C. §2201(a) ...........................................................................................1

15 U.S.C. §§ 1692e, 1692f...................................................................................7

v

R.C. 1322.01, *et seq.*..........................................................................................................7

**Other Authorities**

12 C.F.R. § 1024.41(c)(2)(vi) ........................................................................................4

12 C.F.R. § 1024.41(c)(2)(vi)(A)..................................................................................16

12 C.F.R. § 11024.41(c)(2)(vi) .....................................................................................17

Fed. R. Civ. Proc. 12(b)(6) ....................................................................................1, 4, 5

Defendant Nationstar Mortgage LLC d/b/a RightPath Servicing ("Nationstar") by and through its undersigned counsel, and pursuant to Fed. R. Civ. Proc. 12(b)(6), hereby submits this Memorandum in Support of its Motion to Dismiss the Class Action Complaint filed by James W. Groves and Judith Bartell-Groves, individually and on behalf of others similarly situated ("Plaintiffs"), stating as follows:

## I.     INTRODUCTION AND BACKGROUND

The claims Plaintiffs assert in their Class Action Complaint rest entirely upon a single provision of a United States Department of Housing and Urban Development ("HUD") Handbook. *See* Single Family Housing Policy Handbook ("SF Handbook") 4000.1.III.A.2.o.iii.(C)(2)(c).  The provision at issue directs lenders to provide borrowers who certify they have been impacted by COVID-19 and seek a loan modification with "the lowest monthly P&I [principal and interest] payment achieved under the COVID-19 Recovery Modification." *Id.*  Plaintiffs bring three causes of action, purportedly on behalf of themselves and a class of Ohio borrowers, based solely on Nationstar's alleged failure to comply with this provision of the HUD Handbook, specifically by failing to offer borrowers the best available modification, even though that modification results in an increase in P&I.[1]

---

[1] Specifically, Plaintiffs assert (1) a claim under the Declaratory Judgment Act, 28 U.S.C. §2201(a), asking this Court to declare the "legal scope of Defendant's obligations" under *the HUD Handbook and HUD regulations*, Compl. ¶¶ 78-84, (2) a claim under the Residential Mortgage Lending Act, R.C. 1322.01, et seq. ("RMLA"), alleging that Nationstar violated the RMLA by failing to provide Plaintiffs and the purported class member with a Recovery Modification *as required by the HUD Handbook* and by subsequently misrepresenting to Plaintiffs and the putative class that they did not qualify for such a modification because their P&I would not decrease, Compl. ¶¶ 85-102, and a (3) claim under the Fair Debt Collection Practices Act ("FDCPA"), also based on Nationstar's failure to provide Plaintiffs and putative class members with a Recovery Modification *as required by the HUD Handbook* and allegedly misrepresenting to Plaintiffs and the putative class that they did not qualify for such a modification (Count III). Compl. ¶¶ 103-113.

1

Nationstar is a mortgage servicer for certain residential mortgage loans insured by the Federal Housing Administration ("FHA").  The servicing of those FHA-insured loans is governed by certain regulations and guidelines issued by HUD.  As stated on the HUD website, the SF Handbook provides "everything a lending entity needs to become FHA approved; to originate and receive an FHA insurance enforcement; to service; and to adhere to FHA's quality control policies for almost all Title II forward mortgages."  SF Handbook 4000.1 Information Page, *available at* https://www.hud.gov/program_offices/housing/_sfh/handbook_4000-1.  Thus, these guidelines, including those relied upon by Plaintiffs, pertain to the relationship between Nationstar, as an FHA-approved lender, and HUD.  They do not apply to Plaintiffs or any other borrower, nor do they govern the relationship between Nationstar and any borrower.

The SF Handbook contains instructions for lenders, providing in relevant part, COVID-19 Loss Mitigation Options to borrowers "impacted, directly or indirectly by COVID-19." SF Handbook 4000.1.III.A.2.o.iii.(A).  These options are meant to enable borrowers "to bring their Mortgage current and may reduce the P&I portion of their monthly Mortgage Payment to reduce the risk of re-default and assist in the broader COVID-19 recovery." *Id.*  To assist borrowers who have been impacted by COVID-19, the SF Handbook allows consideration of a modification without documentation from the borrower. *See id.* 4000.1.III.A.2.o.iii.(C)(2)(c).  There is a target payment under this provision of "a minimum 25 percent reduction to the P&I portion of the Borrower's monthly Mortgage Payment."  *Id.* 4000.1.III.A.2.o.iii.(C)(2)(a).  However, if the lender cannot reach that target payment, it "must offer the Borrower the lowest monthly P&I payment   achieved    under    the    COVID-19    Recovery    Modification."        *Id.*

---

Each of these claims plainly rests on Plaintiffs' assertion that they are entitled to bring causes of action to enforce the provisions of the HUD Handbook.

4000.1.III.A.2.o.iii.(C)(2)(c).[2]  It is this final provision upon which Plaintiffs have built the entirety of their case.

As numerous courts have confirmed, the HUD Handbook is not a regulation and does not have the force and effect of law.  Instead, it is guidance provided by HUD to servicers such as Nationstar.  Because it is not law and does not govern the relationship between Nationstar and borrowers, it creates no private right of action.  Instead, HUD guidelines and regulations have been held enforceable by borrowers only when expressly incorporated into the governing mortgage documents.  Here, no such express incorporation was made.  But even if it had been, HUD regulations and guidelines can be used only as a shield to actions taken by lenders and mortgage servicers, not wielded as a sword by borrowers – as Plaintiffs attempt to do here.

Moreover, even assuming this HUD guideline could create a private right of action and was adequately invoked in Plaintiffs' loan contract, and further could be used offensively rather than defensively, Nationstar complied with the Code of Federal Regulations ("CFR"), which—as the only codified regulation at issue—controls.  The CFR's COVID-19 related loan modification options provide "a servicer may offer a borrower a loan modification based upon evaluation of an incomplete application" only so long as the resulting modification "does not cause the borrower's

---

[2] While not necessary for the Court to address for purposes of dismissal, at base Plaintiffs' theory is illogical in that the intent of the COVID-19 Recovery Modification is to alleviate the borrower's debt burden through a targeted 25% reduction in P&I payments.  Although, as noted, the HUD Handbook states that, if the target cannot be reached, the lowest monthly P&I payment achieved under the COVID-19 Recovery Modification must be offered, it is in the context of a payment reduction, and not an increase, in which this directive is made. *See, e.g.*, https://www.hud.gov/program_offices/housing/sfh/nsc/covid_19_loss_mit_options_homeowners (stating that the program "…targets reducing the borrower's monthly principal and interest portion of their monthly mortgage payment").  Hence, if the reduction is only 15%, or 10%, instead of the targeted 25%, the Handbook arguably directs the servicer to make the offer.  In this case, there is no question that the review conducted for named Plaintiffs resulted in an *increase* in the P&I payment, not a decrease in any amount or percentage.

3

monthly required principal and interest payment to increase beyond the monthly principal and interest payment required prior to the loan modification." 12 C.F.R. § 1024.41(c)(2)(vi). In other words, a servicer is prohibited from offering to a borrower a loan modification based on an incomplete application when that modification will result in an increase of the principal and interest that a borrower must pay.

Lastly, all three Counts asserted by Plaintiffs are inadequately pled, as the declaratory judgment action identifies no underlying actionable claim, Nationstar's communications were based on colorable legal interpretations that do not constitute misrepresentations, and Plaintiffs fail to assert that Nationstar was engaged in debt collection activity when it communicated with them concerning loss mitigation options. Plaintiffs' Class Action Complaint has not and cannot overcome these fundamental deficiencies; accordingly, Nationstar respectfully requests that it be dismissed in its entirety.

## II. STANDARD OF LAW

In ruling of a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must construe the complaint in a light most favorable to the plaintiff and accept all factual allegations as true. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). The factual allegations must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). In other words, the Rule 12(b)(6) standard requires that a plaintiff provide "enough facts to state a claim to relief that is plausible on its face." *Id.* at 569.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Bare allegations without a factual context do not create a plausible claim. *Ctr.*

*for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 374 (6th Cir. 2011).  A complaint must "contain[] direct or inferential allegations respecting all the material elements under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). The bare assertion of legal conclusions is not enough to constitute a claim for relief. *Id.* at 716.

"Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Rossmann v. Lazarus*, 2008 U.S. Dist. LEXIS 81701, at *8 (E.D. Va. Oct. 15, 2008).

## III.    ARGUMENT

### A.    There is no private right of action under the HUD Handbook.

> i.    *HUD Handbooks are not regulations, binding, privately enforceable, nor do they have the force and effect of law.*

Plaintiffs' Class Action Complaint rests upon a foundational fallacy.  All of three of their causes of action are based on claims that Nationstar failed to follow a HUD Handbook provision, claims they make in the apparent belief that a lender or servicer's failure to comply with this guideline is actionable by a borrower.  It is not.

HUD Handbooks are not promulgated for the benefit of borrowers, but for "HUD-approved mortgagees in servicing HUD-insured home mortgages" and, thus, their guidelines address only "the relations between the mortgagee and the government, and give the mortgagor no claim or duty owed nor remedy for failure to follow." *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 360 (5th Cir. 1977).  To be clear, Plaintiffs' error is three-fold: HUD Handbooks are not regulations, they do not have the force and effect of law, and they do not create a private right of action.

5

Numerous courts have held that HUD Handbooks are not regulations.  *See generally Cherry Creek Mortg., LLC v. Jarboe*, Civil Action No. 18-cv-00462-KLM, 2022 U.S. Dist. LEXIS 189231, at *18-19 (D.C. Colo. Oct. 17, 2022) (finding HUD Handbooks are not formal regulations and thus "because [claimant] identifies federal regulations only in the form of a nonbinding HUD Handbook as opposed to formal regulations, he has not shown that Cherry Creeks' claim violates federal law"); *Johnson v. Guardian Mgmt.*, 535 F. Supp. 3d 1004, 1014 (Or. Dist. 2021) (noting the "regulatory definition" provided in the C.F.R. and the "guidance" provided in the "HUD Handbook"); *Hines v. MidFirst Bank,* No. 1:14-cv-00505-AT-AJB, 2014 U.S. Dist. LEXIS 189295, at *30-31 n.7 (N.D. Ga. Nov. 26, 2014) ("The HUD Handbook is not a regulation and does not have force of law.")).

In fact, the HUD Handbooks are neither binding nor do they have the force of law.  *See Pierre v. Nfg Hous.,* No. 2:21-cv-00300-GZS, 2021 U.S. Dist. LEXIS 224871, at *9 (D. Maine Nov. 22, 2021) (holding "I can find no authority suggesting that an individual may bring suit to enforce the provisions of the HUD Occupancy Handbook.  Rather, it appears that HUD Handbooks are legally unenforceable"); *Dawoudie v. Nationstar Mortg. LLC*,  448 F. Supp. 3d 918, 925 (N.D. Ill. 2020) ("Moreover, HUD Handbooks—such as the one Plaintiff relies upon—do not bind this Court.  Indeed, HUD handbooks 'do not consist of binding regulations,' nor do they impose any 'binding obligation or legal duties' upon parties." (*quoting United States v. E. River Hous. Corp.*, 90 F. Supp. 3d 118, 133 (S.D.N.Y. 2015))).

Instead, courts characterize the HUD Handbooks as suggestions, guidance, and instructions. *See Thorpe v. Hous. Auth. of Durham,* 393 U.S. 268, 275 (1969) ("[T]he various handbooks and booklets issued by HUD contain mere instructions, technical suggestions, and items for consideration." (internal quotation marks omitted)).

6

Further, as the Sixth Circuit and its sister circuits have made abundantly clear, the HUD Handbooks do not create a private cause of action for borrowers. *See generally Law v. Ocwen Loan Servicing, LLC*, 587 F. App'x 790, 794 (5th Cir 2014) (*per curiam*) (stating "that the HUD Handbook does not afford a private cause of action."); *Fed. Nat'l Mortg. Ass'n v. LeCrone*, 868 F.2d 190, 193 (6th Cir. 1989) ("[N]o express or implied right of action in favor of the mortgagor exists for violation of HUD mortgage servicing policies."); *M.B. Guran Co. v. City of Akron*, 546 F.2d 201, 204 (6th Cir. 1976) (considering a challenge brought the HUD Handbook for competitive bidding and finding it provides no private right of action); *Tanner v. Wells Fargo Bank, N.A.*, Case No. 1:20-cv-01104, 2020 U.S. Dist. LEXIS 232717, at *9 (N.D. Ohio Dec. 10, 2020) (noting the parties do not dispute there is no private right of action under HUD regulations).

Put simply, without a private right of action – *i.e.*, the right to enforce the specific provision of the HUD Handbook they rely on – all of Plaintiffs' claims fail as a matter of law and must be dismissed.

ii.     *Plaintiffs cannot make an end run around the settled law, and thereby create a private right of action, by recasting their HUD Handbook claim as a claim under the FDCPA or RMLA, or for declaratory judgment.*

Plaintiffs transparently attempt to weaponize an otherwise inert HUD guideline by arguing it should serve as a basis to support a Declaratory Judgment action, FDCPA claim, and RMLA claim.  Specifically, Plaintiffs seek a declaration that class members should have been offered the best modification, regardless of whether the modification resulted in an increase in P&I. *See* Compl. ¶¶ 78-84.  They further claim Nationstar's alleged failure to comply with the HUD guidelines violates the RMLA's prohibition on engaging in "conduct that constitutes improper, fraudulent, or dishonest dealings," R.C. 1322, *et seq*. Compl. ¶¶ 85-102. Finally, they claim the same conduct constituted "false, deceptive, or misleading representations in connection with the

7

collection of a debt" in violation of various provisions of the FDCPA, 15 U.S.C. §§ 1692e, 1692f. Compl. ¶¶ 103 – 113.  As set forth above, these claims all rest on the same basic allegation – that Nationstar was required to offer them a Recovery Modification under the SF Handbook and that Nationstar misinterpreted the provision. Compl. ¶¶ 66-68.

In essence, Plaintiffs seek to recast an otherwise unactionable claim based on a HUD Handbook provision as a claim under various statutes.  Courts have considered and given little credence to similar efforts.  *See Estep v. Manley Deas Kochalski, LLC*, 552 F. App'x 502, 506 (6th Cir. App. 2014) ("Failure to comply with [HUD] regulations, of course, is not itself a legitimate basis for bringing suit under the FDCPA.  The FDCPA and HUD occupied-conveyance regulations are two discrete regulatory schemes that serve distinct purposes and operate independently of one another."); *Cionci v. Wells Fargo Bank, N.A.*, C/A No. 9:21-cv-03175-BHH-MHC, 2022 U.S. Dist. LEXIS 169167, at *25-26 (D.C.S.C. July 19, 2022) (noting the "Fourth Circuit has found that the HUD regulation requiring loss mitigation did not create a private cause of action" and finding the claims were "insufficient to establish a claim for fraud based on any alleged violation of the loss mitigation regulations").

In *Webb v. Branch Banking & Trust*, the court considered similar allegations that failure to comply with HUD regulations constituted a violation of the FDCPA.  Civil Action No. 1:14-CV-284-WSD-ECS, 2014 U.S. Dist. LEXIS 189356, at *25 (N.D. Ga. Nov. 12, 2014).  The court summarily rejected the argument, reasoning "Plaintiff has failed to explain how any alleged failure to comply with HUD regulations would constitute a violation of the FDCPA" which "makes no mention of HUD" and does not "impose[] a duty on debt collectors to comply with HUD regulations or to inform a borrower of any rights she may have thereunder."  *Id.*; *see also Burd v. Manley Deas Kochalski PLLC*, Case No. 2:13-cv-593, 2014 U.S. Dist. LEXIS 195192, at *9-12

8

(S.D. Ohio) (Mar. 31, 2014) (declining to find a materially false statement was made giving rise to FDCPA liability when the statement was premised upon a debatable legal interpretation of a HUD regulation).

Similarly, in *Williams v. PHH Mortg. Corp.*, No. 4:20-cv-04018, 2021 U.S. Dist. LEXIS 150787, at *17 (S.D. Tex. Aug. 11, 2021), the court dismissed comparable claims as an attempt to "recast their claim to enforce guidelines in the HUD Handbook (for which there's no private right of action) as one for declaratory judgment and injunctive relief."  *See also Estate of Brantner v. Ocwen Loan Servicing, LLC*, C17-582 TSZ, 2021 U.S. Dist. LEXIS 135170, at *23-24 (W.D. Wash. July 20, 2021) (noting "[l]ike other HUD guidelines and regulations, Handbook 4000.1 does not create a private right of action" and thus "[b]ecause the provisions of Handbook 4000.1 impose no obligations on the part of mortgagees toward their mortgagors, the Estate (as successor to a mortgagor) may not premise a [state Consumer Protection Act] claim, which itself is based on a violation of a regulation promulgated under the Consumer Loan Act, on a failure to comply with HUD guidelines"); *Alexander v. JPMorgan Chase Bank, N.A.*, Civil Action No. 3:12-CV-00081, 2013 U.S. Dist. LEXIS 110048, at *5-9 (S.D. Tex. Aug. 2, 2013) (noting a claimed violation of a HUD regulation could not support a Texas Debt Collection Act Claim because it could not constitute an action prohibited by law as the Handbook is merely guidance and not a legally enforceable right (citing cases finding similarly)).  Because each of Plaintiffs' causes of action is premised upon Nationstar's purported violation of an unactionable HUD guideline, their Class Action Complaint should be dismissed in its entirety.

### B.    The HUD Handbook provision cannot be made actionable by incorporation into a contract.

In what appears to be a concession that the HUD guidelines provide no private cause of action, Plaintiffs seek to give the guidelines teeth by claiming their incorporation into the mortgage

9

documents makes them actionable. Unfortunately for Plaintiffs, while some courts have found HUD regulations and guidelines may give rise to a private cause of action under governing state law where they are expressly incorporated into the lender/borrower agreement, Ohio is not among them. *See Bates v. JPMorgan Chase Bank, N.A.*, 768 F.3d 1126, 1131 (11th Cir. 2014) (discussing both).

Courts within this district have concluded that incorporation of a HUD guideline into a contract does not create a private right of action. *See Tanner v. Wells Fargo Bank, N.A.*, 2020 U.S. Dist. LEXIS 232717, at *11 (N.D. Ohio Dec. 10, 2020) (finding "the failure to comply with HUD regulations, even when incorporated into a mortgage contract, does not provide a basis for a breach of contract claim or a private right of action"); *Wells Fargo Bank, N.A. v. Favino*, No. 1:10 CV 571, 2011 U.S. Dist. LEXIS 35618, at *36 (N.D. Ohio Mar. 31, 2011) ("A failure of a mortgagee to adhere to the HUD servicing requirements in the regulations can be an affirmative defense to foreclosure, but does not form the basis for a claim."); *see also HSBC Bank USA, Natl. Tr. Co. v. Teagarden*, 6 N.E.3d 678, 686 (Ohio Ct. App. 2013); *Dixon v. Wells Fargo Bank, N.A.,* Case No. 12-10174, 2012 U.S. Dist. LEXIS 137769, at *24 (E.D. Mich. Sept. 25, 2012) (applying Michigan law and stating the court was "not inclined to permit Plaintiff's to merely restate or redress their claim based on a violation of the HUD regulations, which otherwise is clearly foreclosed, as a breach of contract claim based on [a provision] of the mortgage agreement"). The Court in *Tanner* reasoned:

> While . . . a regulation incorporated into a contract may create a private right of action when Congress intended to create a private right of action, there is no evidence in the record that suggests a HUD regulation may create a private right of action when incorporated into a contract where Congress did not create such right. *See HSBC Bank USA*, 2013-Ohio-5816, ¶ 43, 6 N.E.3d 678 ("There is abundant state law precedent that the failure to comply with HUD regulations, when incorporated into the mortgage contract, constitutes a defense to the foreclosure action (similar to notice provisions) rather than a basis for a breach of contract

10

claim") (collecting cases). Put differently, *it is simply incorrect to say that "HUD regulations" tangentially incorporated into a mortgage contract can create a private cause of action, allowing Plaintiff to play the role of regulatory enforcer*, that has not been authorized by Congress. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S. Ct. 2479, 61 L. Ed. 2d 82 (1978) (holding in the absence of clear evidence of congressional intent, the court may not usurp the legislative power by unilaterally creating a cause of action); *see also St. Christopher Assocs. v. United States*, 511 F.3d 1376, 1384 (Fed. Cir. 2008) (holding that a general reference to the agency's regulations did not incorporate a specific regulation promulgated by the agency or a specific section of the agency's handbook.).

2020 U.S. Dist. LEXIS 232717, at *11-12 (emphasis added).[3]  Accordingly, Plaintiffs' claims cannot be rescued by invocation of the mortgage documents and dismissal is proper.

### C.    The HUD Handbook provisions are not incorporated into the mortgage documents.

Even assuming, *arguendo*, that a private right of action could exist, the guideline at issue would need to be expressly incorporated into the contract—and the instant mortgage documents do not incorporate the HUD Handbook.  The language relied upon by Plaintiffs from their Note and Mortgage is as follows:

> In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults.  This Note does not authorize acceleration when not permitted by HUD regulations.

---

[3] It is worth noting that where courts have allowed incorporation of the HUD regulations or Handbook into the mortgage documents, that incorporation has simply given rise to a breach of contract claim.  *See, e.g., Donlon v. Evolve Bank & Trust*, 2014 U.S. Dist. LEXIS 44765 (W.D. Tenn. Mar. 31, 2014) ("[A] violation of the Handbook may sustain a breach of contract claim where a final agreement expressly incorporates the Handbook's various terms.").  But Plaintiffs fail to even assert a breach of contract claim.  This omission is likely because Ohio law does not allow a breach of contract claim by a party that was first to breach the contract, as borrowers were here – by failing to pay.  *See Teagarden*, 6 N.E.3d at 687 (finding the breach of contract claim premised on HUD regulations failed under state law for a number of reasons, including because "[a]n essential element of a claim for breach of contract under Ohio law is 'performance by the plaintiff'" and "[t]o claim that [the lender] breached the HUD regulations to accelerate the mortgage, the [borrowers] would necessarily have to be in default and, therefore, could not claim to have performed under the mortgage.").

11

> This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

*See* Compl., ¶ 7.

This language wholly fails to support Plaintiffs' claims.  As an initial matter, the Note and Mortgage purport to incorporate only the "HUD regulations."  As discussed *supra*, the HUD Handbook is not a regulation.  *See, e.g., Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*, 704 F. Supp. 2d 177, 201 n.24 (E.D.N.Y. 2010) ("The Court notes that although helpful, the HUD Handbook is neither a statute nor a regulation, and has not been promulgated by HUD so as to give it the force of law." (citing *In re Mortg. Escrow Deposit Litig.*, MDL 889, 1995 U.S. Dist. LEXIS 1555, 1995 WL 59238, at *3 (N.D. Ill. Feb. 9, 1995)).  Thus, the contractual reference to HUD regulations does not refer to HUD Handbooks.  *See Alexander*, 2013 U.S. Dist. LEXIS 110048, at *5-9 (noting the CFR differentiates between regulations and handbooks, that the handbook at issue was not incorporated into the CFR, and thus the claimant failed to identify a "regulation" that had been violated).

Moreover, assuming further that the term "regulation" could be broadly interpreted to incorporate non-regulations such as the HUD Handbooks, this invocation lacks the requisite specificity.  "Even if a SF Handbook or HUD regulation referenced in a mortgage contract could potentially form the basis for a breach of contract claim, the contract must use language that are expressed and clear, so as to leave no ambiguity about the identity of the material being referenced, nor any reasonable doubt about the fact that the referenced material is being incorporated into the contract."  *Tanner*, 2020 U.S. Dist. LEXIS 232717, at *12.  In *Tanner*, the court was considering the following contract language, which is nearly identical to that involved in this case:

> (d) <u>Regulations of HUD Secretary</u>. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does

not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

*Id.* at *11.

The court concluded this "casual reference to regulations issued by the '[HUD] Secretary'" did not "come close to meeting the requirement that the regulation needs to be specifically identified and that the contractual language must be clear that the purpose of the reference is to make it part of the contract." *Id.* at *13 (alteration in original). Noting, "the Mortgage does not reference any portion of HUD regulations or the SF Handbook nor provide any support for how the particular provisions cited in Plaintiff's Complaint are incorporated into the terms of Plaintiff's Mortgage," the court held that the "general reference to HUD regulations in the Mortgage" did not suffice to support the plaintiff's claim.

The *Tanner* court's reasoning applies equally here.  The unspecified and casually referenced "HUD regulations" do not incorporate the SF Handbook, much less the particular provision Plaintiffs seek to enforce.  Since Plaintiffs base their claims upon the alleged incorporation of specific HUD Handbook guidelines into their mortgage documents, and neither the mortgage documents nor law supports such an incorporation, Plaintiffs' claims necessarily fail and dismissal is proper.

### D.    HUD Handbook provisions can be used only as a shield to defend against foreclosure, not as a sword, as Plaintiffs seek to use it.

As noted in *Favino*, even where a HUD regulation or guideline is adequately incorporated into a contract, Ohio law allows that term to serve only as a shield to defend against a foreclosure action, not as a sword giving rise to an independent action.  *See Favino*, 2011 U.S. Dist. LEXIS 35618, at *36 (noting a servicer's failure to comply with HUD requirements "cannot be a cause of action, only an affirmative defense").  Whether asserted as a breach of contract claim or inventively

13

brought as an FDCPA or RMLA claim, Plaintiffs attempts to wield the HUD guidelines as a sword fail under Ohio law.  *See BAC Home Loans Servicing v. Taylor*, 986 N.E.2d 1028, 1035 (Ohio Ct. App. (9th Dist.) 2013) ("[B]y contract, [the lender] was required to comply with the HUD regulations governing acceleration and foreclosure, and the [borrowers] were entitled to use any failure to do so as a shield in the subsequent foreclosure case."); *Teagarden*, 6 N.E.3d at 686 (finding the borrower's breach of contract claim failed under Ohio law because "abundant state law precedent that the failure to comply with HUD regulations, when incorporated into the mortgage contract, constitutes a defense to the foreclosure action (similar to notice provisions) rather than a basis for a breach of contract claim").

Again, without any affirmative actionable basis for their claims, the Complaint fails and must be dismissed.

### E.     Nationstar's actions were in compliance with the CFR, which is controlling over the non-binding HUD guidelines.

Finally, even if Plaintiffs can surmount the numerous obstacles to their claims, they cannot prevail. In other words, even if Plaintiffs could show entitlement to a private right of action based on a HUD Handbook provision, that is specifically incorporated into their loan contract, and usable as a sword under Ohio contract law (which they cannot), Nationstar's actions were proper because it followed the CFR, which controls over the non-binding HUD Handbook.  *See generally Mathews v. PHH Mortg. Corp.,* 2020 U.S. Dist. LEXIS 161408, at *6 (N.D. Okla. Sept. 3, 2020) (finding "HUD Handbooks do not consist of binding regulations, nor do they impose any binding obligations or legal duties upon the parties" and thus, "the only binding regulation" is found in the Code of Federal Regulations).

As discussed at length in *Bridgeport Towers, LLC v. Berrios*, BSRP079841, 2013 Conn. Super. LEXIS 2499 (Nov. 1, 2013), Handbooks are only advisory, in contrast to the regulations in

14

the CFR, which have been codified.  *See id.* at *11 ("If HUD's intent was to promulgate the Handbook as regulatory law, it would presumably have chosen to codify its requirements in the Code of Federal Regulations."); *see also Feldman v. U.S. Dep't of Housing & Urban Development*, 430 F. Supp. 1324, 1327 (E.D. Pa. 1977) ("Generally . . . binding regulations are required to be published in the Federal Register.").

The court in *Berrios* further found "multiple sections of the CFR governing HUD imply the Handbooks as secondary considerations holding no legal enforceability."  2013 Conn. Super. LEXIS 2499, at *13.  The court concluded "HUD did not publish the Handbook according to its own regulatory conditions, and the unclear and contradictory language among the Handbook and Title 24 of the CFR, Handbook 4350 is only 'intended for internal use for the information and guidance of HUD officials.'"  *Id.*; *see also generally AHEPA 91, Inc. v. United States HUD*, 43 F. App'x 450, 454 (2d Cir. 2002) (noting movant had pointed to "no statute, regulation, or even handbook section or guidance document" that would be controlling for HUD); *Fed. Nat'l Mortg. Assoc. v. Ricks*, 83 Misc. 2d 814, 821 (Kings Cnty. Supreme Ct. Sept. 4, 1975) ("[T]he Handbook cannot constitute a valid rule or regulation in view of HUD's failure to publish the Handbook in the Federal Register in accordance with HUD's own regulations.").  The Code of Federal Regulations is published regulation that takes precedence over the non-binding guidance of the HUD Handbook.

Plaintiffs' claim that Nationstar violated a single provision of the HUD guidelines—which is unactionable and unsustainable for all the reasons previously stated—further fails because the CFR precludes Nationstar from providing borrowers who have submitted an incomplete application with a modification that results in a higher principal and interest payment than was previously being made by the borrower.  As outlined above and discussed in the Plaintiffs' Class

15

Action Complaint, the HUD guidelines state that a lender "must offer the Borrower the lowest monthly P&I payment achieved under the COVID-19 Recovery Modification." SF Handbook 4000.1.III.A.2.o.iii.(C)(2)(c).  Although, viewed in a vacuum, this instruction appears to control the matter (subject, of course, to a determination as to what exactly that provision means, *see* FN 2, *supra*) the CFR imposes explicit prohibitions on a lender's ability to provide a modification to a borrower, where that modification would result in an increased P&I.  Specifically, when processing a COVID-19 related loss mitigation request, a lender is allowed to "offer a loan modification based upon evaluation of an incomplete application" so long as said modification "does not cause the borrower's monthly required principal and interest payment to increase beyond the monthly principal and interest payment required prior to the loan modification." 12 C.F.R. § 1024.41(c)(2)(vi)(A).

To be clear, to meet the urgent needs of borrowers under the conditions resulting from the COVID-19 pandemic, both the CFR and the relevant HUD guidelines contemplate and allow processing of an incomplete application. *Compare id.* ("[A] service may offer a borrower a loan modification based upon evaluation of an incomplete application . . . ."), *with* SF Handbook 4000.1.III.A.2.o.iii.(C)(2)(c) ("No income documentation is required to calculate the Borrower's modified monthly Mortgage Payment.").  But the controlling CFR places additional limitations on the broad servicing guidelines outlined in the HUD Handbook.  Nothing in the HUD Handbook relieves Nationstar of its obligation to comply with the CFR prohibition on offering increased principal and interest modification options to borrowers who have provided incomplete applications.  Plaintiffs make the erroneous assertion that Nationstar was *required* by the guidance of the HUD Handbook to violate the regulatory limitations of the CFR.  Nothing in the CFR or caselaw supports such a conclusion. Because Nationstar properly followed the CFR, it cannot be

16

liable for violations of the RMLA or FDCPA for failing to offer Plaintiffs a Recovery Modification or for its statements that Plaintiffs circumstances did not qualify them for such a modification.

### F.     The complaint fails to state a claim as to each asserted count.

In addition to the foregoing arguments, each of which independently disposes of the Class Action Compliant in its entirety, Plaintiffs individual claims themselves are unsustainable.

First, as numerous courts have reiterated, "the Declaratory Judgment Act alone does not create a federal cause of action." *Harris Cnty. Tex. v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015). It only "authorizes a federal court to 'declare the rights and other legal relations of any interested party seeking such declaration." *Id.* (citation omitted). Because the HUD Handbook creates no private right of action, Plaintiffs cannot "recast their claim to enforce guidelines of the HUD Handbook . . . as one for declaratory judgment." *Williams*, 2021 U.S. Dist. LEXIS 150787, at *17.

Second, Plaintiffs allege Nationstar engaged in "improper and dishonest dealing" with Plaintiffs by "misrepresenting to Plaintiffs" that they did not and could not qualify for a modification, thereby violating the RMLA.  Compl. ¶ 95.  To be clear, Plaintiffs' claims are based on their assertion that Nationstar "misinterprets the SF Handbook" and "misinterprets 12 C.F.R. § 11024.41(c)(2)(vi)." Compl. ¶ 66.  In other words, Plaintiffs' claims are based on Nationstar's legal interpretation of federal regulations and guidance issued by HUD. As one court within this circuit has previously held in the FDCPA context, representations "based on a colorable legal argument," even when the argument did not prevail, could not constitute a material misrepresentation. *See Burd*, 2014 U.S. Dst. 195192, at *11-12.  As noted above, Nationstar's actions were taken to comply with the directives contained in the CFR, based on its reasonable interpretation of that regulation.    Accordingly, because Nationstar's actions "turned on the

17

debatable legal interpretation of a regulation by HUD," they do not rise to the level of misrepresentations or improper and dishonest dealings.  *Id.* at *12.

Third, Plaintiffs have wholly failed to allege that Nationstar was engaged in an attempt to collect a debt when it communicated with them about their loss mitigation options, which is a necessary element of the FDCPA claim.  "To plead an FDCPA claim, a plaintiff must allege (1) that he or she is a 'consumer' as defined by the Act; (2) that the 'debt' arises out of transactions that are primarily for personal, family, or household purposes; (3) that the defendant is a 'debt collector' as defined by the Act; and (4) that the defendant violated § 1692e's prohibitions.  *Smith v. Nationstar Mortg., LLC*, 756 F. App'x 532, 535-36 (6th Cir. 2018) (citing *Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012)).  "To violate § 1692e, a debt collector's representation or action must be materially false or misleading (meaning it must tend to mislead or confuse the least sophisticated consumer), and its purpose must be to induce payment by the debtor."  *Id.* (internal citations omitted).  There is no dispute that the communications at issue here were made in connection with Plaintiffs' request to secure a modification of their loan. "[C]ommunications regarding loan modification or loss mitigation are not related to debt collection and therefore do not fall under the protections of the FDCPA."  *Muathe v. Wells Fargo Bank, N.A.*, Case No. 18-2064-CM-TJJ, 2019 U.S. Dist. LEXIS 24148, at *15 (D. Kan. Feb. 14, 2019); *see also Farquharson v. Citibank, N.A.*, 664 F. App'x 793, 800-01 (11 Cir. 2016) (finding the loan modification communications were not an act to collect a debt because, among other things, the communications did not demand or request payment, nor did it threaten punitive actions if the borrower failed to make payment, but simply outlined a loan modification program); *Santoro v. CTC Foreclosure Serv. Corp.*, 12 F. App'x 476, 480 (9th Cir. 2001) ("A letter suggesting loan workout options is not seeking to collect the debt.").

Plaintiffs have failed to identify any communication that constitutes an attempt to collect a debt, much less explained how it constituted a request for payment. The letters they attach to the Complaint plainly relate solely to a possible loan modification and were sent in connection with Plaintiffs' request for a loan modification, not to collect a debt. The third letter was not even sent to Plaintiffs, but to their attorney. Thus, there can be no FDCPA violation. *See generally Lucas v. New Penn Fin., LLC*, Civil Action No. 17-cv-11472-ADB, 2019 U.S.Dist. LEXIS 15219, at *14 (concluding because "the Complaint does not allege that any of the direct calls or letters from [the debt collector] to [the borrower] demanded payment, referenced other communications demanding payment, or demanded financial information for the purpose of settling the debt," the complaint was "insufficient to state a violation for the FDCPA").

## IV. CONCLUSION

Plaintiffs' Class Action Complaint is premised entirely upon a fundamental misunderstanding of the scope and enforceability of the HUD Handbooks and guidelines. They are not regulations, do not have the force and effect of law, and do not give rise to a private right of action. Under Ohio law, HUD guidelines and regulations cannot be incorporated into a contract to create a private right of action. Instead, when specifically referenced in a contract, they can be used as a shield to a foreclosure, not weaponized as a sword against lenders and servicers. But the HUD guidelines relied upon by Plaintiffs are not incorporated into the mortgage documents at issue here and Plaintiffs impermissibly attempt to wield them as a sword. Even assuming Plaintiffs could overcome all of the foregoing, Nationstar's actions complied with the only binding regulations applicable, which are found in the CFR and control over the non-binding HUD guidelines. Finally, each of the counts alleged by Plaintiffs independently fails. Accordingly, Nationstar respectfully requests that Plaintiffs' claims be dismissed with prejudice.

19

Respectfully submitted,

/s/ James W. Sandy
_____
James W. Sandy (0084246)
McGlinchey Stafford
3401 Tuttle Rd, Ste 200
Cleveland, OH 44122
Telephone: (216) 378-9914
Facsimile: (216) 803-6945
jsandy@mcglinchey.com
*Counsel for Defendant*
*Nationstar Mortgage LLC dba Rightpath*
*Servicing*

## CERTIFICATE OF SERVICE

**I CERTIFY** that a true and accurate copy of the foregoing *Defendant Nationstar Mortgage LLC dba Rightpath Servicing's Memorandum in Support of Motion to Dismiss* was served upon the following via the Court's electronic filing system this 23rd day of January 2023:

Marc E. Dann
Brian D. Flick
Michael A. Smith
Daniel M. Solar
notices@dannlaw.com
*Counsel for Plaintiffs*

/s/ James W. Sandy
_____
James W. Sandy (0084246)

20

21606309.1

## CERTIFICATE OF COMPLIANCE

I hereby certify that this ***Memorandum in Support of Motion to Dismiss*** has not been assigned to any track and adheres to the page limitations set forth in Local Rule 7.1(f).

By: *James W. Sandy*
James W. Sandy (0084246)

21