# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION (CLEVELAND)

| | |
|---|---|
| **JAMES W. GROVES**, *et al.*, | Case No. 1:22-cv-02072-PAG |
| Plaintiffs, | Chief Judge Patricia A. Gaughan |
| v. | |
| **NATIONSTAR MORTGAGE LLC d/b/a RIGHTPATH SERVICING**, | |
| Defendant. | |

## PLAINTIFFS' RESPONSE IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

**Dann Law**
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Brian D. Flick (0081605)
Michael A. Smith Jr. (0097147)
15000 Madison Ave.
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiffs James W. Groves and Judith Bartell-Groves and the Putative Classes*

## I. INTRODUCTION

Plaintiffs James W. Groves and Judith Bartell-Groves ("Plaintiffs"), through counsel, hereby respond in opposition to the motion to dismiss (the "Motion" or Doc. 11) filed by Defendant Nationstar Mortgage LLC, d/b/a RightPath Servicing ("Nationstar"). Plaintiffs bring three claims against Nationstar on behalf of themselves and putative class members for a declaratory judgment, violations of the Ohio Residential Mortgage Licensing Act, 1322.01, *et seq.* (RMLA), and violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* (FDCPA).

Plaintiffs brought this case because of the problems stemming from Nationstar's improper denials of Plaintiffs and the Class members' eligibility for a COVID-19 Recovery Modification. Nationstar based these improper denials on an eligibility requirement that does not exist. As a result of Nationstar's improper conduct Plaintiffs and the Class members lost out on the opportunity to obtain a COVID-19 Recovery Modification or other loan modifications with lower interest rates, encountered significant delays in the loss mitigation process, and remained at risk of foreclosure and the loss of their homes. Nationstar's conduct has also resulted in Plaintiffs and the Class members incurring unnecessary pecuniary and non-pecuniary harm.

## II. FACTUAL BACKGROUND

On May 2, 2005, James Groves executed a mortgage note ("Plaintiffs' Note") which was secured by a mortgage on Plaintiffs' principal place of residence which was executed by Plaintiffs ("Plaintiffs' Mortgage") (collectively, "Plaintiffs' Loan"). (Doc. 1, ¶ 52; Doc. 1-1). Plaintiffs fell upon financial hardships and defaulted on their obligations pursuant to Plaintiffs' Loan. (Doc. 1, ¶ 53). Foreclosure proceedings were initiated against Plaintiffs on or about December 16, 2019 (the "Foreclosure"). (Doc. 1, ¶ 54). Nationstar obtained servicing rights to Plaintiffs' Loan effective May 31, 2022. (Doc. 1, ¶ 56; Doc. 1-2). At the time Nationstar obtained servicing rights

1

to Plaintiffs' Loan, Nationstar claimed that the Loan was in default for the payment due and owing for April 1, 2019 and thereafter. (Doc. 1, ¶ 57).

On July 13, 2022, Plaintiffs, through counsel, contacted Nationstar to request loss mitigation options pursuant to the COVID-19 Recovery Options. (Doc. 1, ¶ 59). Nationstar sent correspondence dated July 14, 2022, confirming that Plaintiffs sought to be reviewed for eligibility for "COVID-19 mortgage assistance solutions" and that Nationstar had "all of the information" needed to review Plaintiffs' eligibility for the same. (Doc. 1, ¶ 60; Doc. 1-3). Nationstar sent correspondence dated August 11, 2022, stating that that Plaintiffs were denied for a Recovery Modification, which Nationstar identified as an "FHA Disaster Modification" because of an "Insufficient Monthly Payment Reduction", specifically stating "[t]he required modification terms would result in a principal and interest mortgage payment that is greater than your current principal and interest payment and therefore *does not meet the requirements of the program*" (emphasis added) (the "Denial"). (Doc. 1, ¶ 61; Doc. 1-4).

As the Denial improperly claimed that the Recovery Modification required a reduction in the principal and interest portion of Plaintiffs' monthly payments, Plaintiffs, through counsel, sent correspondence to Nationstar dated August 19, 2022, appealing the Denial, stating that it is believed Nationstar provided inaccurate information regarding the eligibility requirements for a Recovery Modification, and requesting that Nationstar provide the section of the Single Family Housing Policy Handbook 4000.1 (the "SF Handbook") that states that a reduction in the principal and interest portion of Plaintiffs' monthly payments is required to qualify for a Recovery Modification (the "Appeal"). (Doc. 1, ¶ 62; Doc. 1-5).

On or about September 1, 2022, Nationstar responded to the Appeal, stating that the Denial was correct, as the principal and interest portion of the modified payment under a Recovery

2

Modification would not have been reduced. (Doc. 1, ¶¶ 63-64; Doc. 1-6). Further, Nationstar stated:

> Per Consumer Financial Protection Bureau (CFPB) guidelines, Reg X - 1024.41(c)(2)(vi), without a complete application, we cannot offer the borrower a modification that would increase their P&I payment. The borrower can provide a complete modification application to be considered for the standard FHA-Home Affordable Modification Program (HAMP) modification assistance.

(Doc. 1-6). That is, Nationstar not only misinterprets the SF Handbook regarding the eligibility requirements for a Recovery Modification, but also misinterprets 12 C.F.R. § 1024.41(c)(2)(vi) in claiming that such provision of Regulation X somehow prohibits Nationstar from offering certain loss mitigation options. (Doc. 1, ¶ 66). Per the SF Handbook, Nationstar was required to offer a Recovery Modification to Plaintiffs with the proposed terms contained in the Response. (Doc. 1, ¶ 68). Had Nationstar offered such a modification, Plaintiffs had the ability and desire to accept the same and fulfill their payment obligation thereunder which would have cured the default on Plaintiffs' Loan. (Doc. 1, ¶ 68).

Due to Nationstar's conduct, Plaintiffs have not yet obtained a loan modification and remain at imminent risk of a foreclosure judgment and the sale of their home. (Doc. 1, ¶ 69). Nationstar's improper actions caused Plaintiffs to suffer from actual and proximate damages. (Doc. 1, ¶ 70).

### III. LEGAL STANDARD

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

3

Courts must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).

The Complaint meets and exceeds these standards.

## IV.     ARGUMENT

**A.     THE LACK OF A PRIVATE RIGHT OF ACTION UNDER THE HUD HANDBOOK DOES NOT BAR PLAINTIFFS' CLAIMS**

The lack of a private right of action under the HUD Handbook does not preclude statutory and state law claims referencing or incorporating it. *See Mik v. Fed. Home Loan Mortg. Corp.*, 743 F.3d 149, 167 (6th Cir. 2014) ("[W]e reject Freddie Mac's argument that the Miks cannot use violations of the [Protecting Tenants at Foreclosure Act of 2009] to establish their state law claims."); *Monday-West v. Wells Fargo Bank, N.A.*, No. 20-6381, 2022 U.S. App. LEXIS 31247, at *17 (6th Cir. Nov. 9, 2022) ("While Wells Fargo is right that [Home Affordable Modification Program] alone does not provide for a private right of action, it does not necessarily prohibit state-law claims; even where a violation of a federal law is used for support."). The Complaint's references to the HUD Handbook provide the necessary detail to explain how Nationstar violated the FDCPA and RMLA.

**1.     Plaintiffs Are Not Asserting a Right of Action Under the HUD Handbook.**

In the Motion, Nationstar relies upon authority holding that there is no private right of action for a breach of the HUD Handbook. However, several of those cases merely stand for the proposition that there is no independent private right of action to enforce the HUD Handbook under the National Housing Act, 12 U.S.C. §§ 1701, *et seq.* ("NHA"). For example, in *LeCrone*, the decision that there is no private right of action available to a mortgagor for a mortgagee's noncompliance with the HUD Handbook was based on the understanding that the HUD Handbook governs relations between the mortgagee and the government, and give the mortgagor no claim

4

for duty owed or for the mortgagee's failure to follow the HUD Handbook. *Fed. Nat. Mortg. Ass'n v. LeCrone*, 868 F.2d 190, 193 (6th Cir. 1989); *see also M. B. Guran Co. v. Akron*, 546 F.2d 201, 204 (6th Cir. 1976). In these circumstances, this conclusion makes sense, however, Plaintiffs are not asserting a right of action under the HUD Handbook, but instead the FDCPA and RMLA which provide the duties that Nationstar owe Plaintiffs.

### 2. Nationstar's End-Run Argument Has No Merit.

In *Mik*, the Sixth Circuit noted that the analogous case of *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012) had extensively addressed the "end-run" argument. In *Wigod*, the district court dismissed the plaintiffs' contract and consumer protection claims, reasoning that they were premised "on the terms and procedures set forth via HAMP." *Id.* at 581. The Seventh Circuit reversed, holding "[t]he absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because it refers to or incorporates some element of the federal law." *Id.* at 581. The Court further explained "[t]here is no indication that Congress meant to foreclose suits against servicers for violating state laws that impose obligations parallel to those established in a federal program." *Id.* at 580; *see also Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 318 (2005) ("The violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings.").

Other circuit courts agree with the reasoning in *Mik* and *Wigod*. *See Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 234, 242 (1st Cir. 2013); *Mackenzie v. Flagstar Bank, FSB*, 738 F.3d 486, 496 (1st Cir. 2013); *Bukowski v. Wells Fargo Bank, N.A.*, 757 F. App'x 124, 128-129 (3d Cir. 2018); *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 852 (8th Cir. 2014); *Corvello v. Wells Fargo*, 728 F.3d 878, 880, 882-883 (9th Cir. 2013); *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1259-1260 (10th Cir. 2016).

Nationstar's reliance on *Estep v. Manley Deas Kochalski, LLC*, 552 F. App'x 502 (6th Cir. App. 2014) is misplaced because the issue in *Estep* was whether any animating purpose of a law firm's letter was to induce payment by the plaintiffs. *Id.* at 506. The Court stated that the plaintiffs failed to explain how the law firm's alleged violations of HUD regulations constituted an intention to induce payment from the plaintiffs. *Id.* The Court found that the plaintiffs' argument that the letter *might* have been intended to permit the defendants to save costs was implausible. *Id.* (emphasis in original). The Court noted that if the defendants included certain content in the letter to induce payment, such actions may violate the FDCPA. *Id.* at 507. The Court concluded, stating that "[s]ince the letter was not sent in connection with the collection of a debt, the FDCPA did not govern the letter's content." *Id.* at 508. As such, *Estep* stands for the proposition that violations of the HUD regulations are not automatically violations of the FDCPA and *Estep* does not bar claims based on actions that violate both the HUD regulations and the FDCPA.

*Cionci v. Wells Fargo Bank, N.A.*, C/A No. 9:21-cv-03175-BHH-MHC, 2022 U.S. Dist. LEXIS 169167, at *25-26 (D.C.S.C. July 19, 2022), is unpersuasive because *Cionci* conflicts with the holding of *Mik*. The court in *Webb v. Branch Banking & Tr.*, No. 1:14-CV-284-WSD-ECS, 2014 U.S. Dist. LEXIS 189356 (N.D. Ga. Nov. 12, 2014) dismissed the plaintiff's FDCPA claim because the claim was not properly pled. The Court stated that the plaintiff failed to identify any specific false representation or falsely threatened legal action and also failed to "explain how any alleged failure to comply with HUD regulations would constitute a violation of the FDCPA." *Id.* at *25. In the instant matter, Nationstar's failure to comply with the HUD Handbook directly resulted in Nationstar failing to provide Plaintiffs with a Recovery Modification and Nationstar making false and/or misleading statements in the Denial as to Plaintiffs' eligibility for a Recovery Modification. *Burd* is readily distinguishable as the case concerned a law firm making statements

6

on behalf of its clients in court. *Burd v. Manley Deas Kochalski PLLC*, No. 2:13-cv-593, 2014 U.S. Dist. LEXIS 195192, at *10-11 (S.D. Ohio Mar. 31, 2014) ("In these circumstances, to hold that the arguments MDK made were materially false would potentially lead to liability for false statements under § 1692e any time a mortgagee loses on a debatable question of law in a state foreclosure lawsuit."). In the instant matter, Nationstar was not making a "debatable legal interpretation" in any legal proceeding. Finally, Nationstar's reliance on cases from the Fifth Circuit is misplaced because the Fifth Circuit, unlike the Sixth Circuit, has expressly stated that "the HUD Handbook does not afford a private cause of action." *Law v Ocwen Loan Servicing, LLC*, 587 F App'x 790, 794 (5th Cir 2014, *per curiam*) (citing *Roberts v Cameron-Brown Co.*, 556 F2d 356, 360-361 (5th Cir 1977)).

**B.     THE COMPLAINT DOES NOT ASSERT A BREACH OF CONTRACT OR WRONGFUL FORECLOSURE CLAIM**

Nationstar's arguments based on *Tanner*, *Favino*, *Teagarden*, and *Dixon* are misplaced. First, Plaintiffs are not bringing a breach of contract or wrongful foreclosure claim against Nationstar, which Nationstar acknowledges in footnote three of the Motion. (Doc. 11, p. 11 fn. 3). Confusingly, Nationstar attempts to conflate breach of contract claims with Plaintiffs' "inventive" claims for violations of the FDCPA and RMLA.

Nationstar cites to *Tanner v. Wells Fargo Bank, N.A.*, Case No. 1:20-cv-01104, 2020 U.S. Dist. LEXIS 232717 (N.D. Ohio Dec. 10, 2020), wherein the Court refused to dismiss the plaintiff's claim for negligent misrepresentation. *Id.* at *14-17. The Court determined that the plaintiff sufficiently alleged that the servicer "failed to exercise reasonable care or competence in communicating information about Plaintiff's loss mitigation options." *Id.* at *16-17. Plaintiffs allege that similar conduct occurred in the instant matter, but instead bring claims pursuant to the

7

FDCPA and RMLA, which were not available in *Tanner* due to Wells Fargo's status as a creditor and exemption from the RMLA.

After *Favino*, *Teagarden*, and *Dixon* were decided, the Sixth Circuit held in *Mik* that the lack of a private right of action under the HUD Handbook does not preclude statutory and state law claims referencing or incorporating it. *See Mik*, 743 F.3d at 167; *see also Monday-West*, 2022 U.S. App. LEXIS 31247, at *17. As such, Nationstar's reliance on these cases is unavailing.

In *Wells Fargo Bank, N.A. v. Favino*, No. 1:10 CV 571, 2011 U.S. Dist. LEXIS 35618 (N.D. Ohio Mar. 31, 2011), the Court dismissed the plaintiff's wrongful foreclosure claim, because the HUD regulations established no duty between the mortgagor and mortgagee. *Id.* at *35-36. The plaintiff's FDCPA claim was dismissed because Wells Fargo was a creditor and not a debt collector and the plaintiff failed to allege sufficient facts to show that Wells Fargo violated the FDCPA. *Id.* at *19-24. The plaintiff also brought a claim pursuant to the Ohio Consumer Sales Practices Act, R.C. 1345.01, *et seq.* (CSPA), which would be the most similar to the RMLA, which was dismissed because Wells Fargo is exempt from the CSPA. *Id.* at *24-26. The Court failed to mention the lack of a private right of action to enforce HUD regulations as reasons for the dismissal of these claims.

In *HSBC Bank USA, Natl. Tr. Co. v. Teagarden*, 6 N.E.3d 678 (Ohio Ct. App. 2013), the majority held "that the failure to comply with HUD regulations, when incorporated into the mortgage contract, constitutes a defense to the foreclosure action...rather than a basis for a breach of contract claim," it failed to adequately explain why such was the case. *Id.* at 686. As noted by the *Teagarden* dissent, *Teagarden* was wrongly decided. *Id.* at 695 (O'Toole, J., concurring in part and dissenting in part) (citing *Wigod*). Also, the plaintiff's FDCPA claim was similarly dismissed because Wells Fargo was a creditor and not a debt collector. *Id.* at 683. Like in *Favino*, the

8

plaintiff's FDCPA and negligent misrepresentation claims were not dismissed due to any claimed lack of a private right of action to enforce HUD regulations. *Id.* at 685. As such, *Teagarden* is limited to breach of contract cases.

In *Dixon v. Wells Fargo Bank, N.A.*, No. 12-10174, 2012 U.S. Dist. LEXIS 137769 (E.D. Mich. Sep. 25, 2012), the Court noted the difference between Michigan and Ohio law, citing *Sinclair v. Donovan*, No. 11-cv-00010, 11-cv-00079, 2011 U.S. Dist. LEXIS 128220 (S.D. Ohio Nov. 4, 2011), wherein the Court stated that a "mortgagee's failure to comply with the [HUD] regulations made part of the parties' agreement could give rise to liability on a contract theory because the parties incorporated the terms into their contract." *Sinclair*, 2011 U.S. Dist. LEXIS 128220, at *26. The Court dismissed the plaintiff's claim because Michigan law does not permit a claim for breach of contract where there is an independent statutory duty to comply with the HUD regulations. *Dixon*, 2012 U.S. Dist. LEXIS 137769, at *21-26.

### C. NATIONSTAR'S SHIELD NOT SWORD ARGUMENT HAS NO MERIT

As discussed repeatedly, Nationstar's argument based on *Favino* and *Teagarden* is inconsistent with the Sixth Circuit's decision in *Mik*, and should be disregarded.

In *Favino*, the Court held that the plaintiff's claim for wrongful foreclosure cannot be a cause of action, only an affirmative defense. *Favino*, 2011 U.S. Dist. LEXIS 35618, at *36. This is because there is no discrete claim for wrongful foreclosure under Ohio law. *Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902, 914 (S.D. Ohio 2013) (citing *Favino*); *Ensley v. Fed. Home Loan Mortg. Corp.*, No. 1:21-cv-297, 2021 U.S. Dist. LEXIS 88466, at *5 (N.D. Ohio May 10, 2021). As discussed above, the plaintiff's FDCPA and CSPA claims were dismissed for entirely unrelated reasons. *Id.* at *19-26. The same is true in the FDCPA and negligent misrepresentation claims raised in *Teagarden*. *Teagarden*, 6 N.E.3d at 683, 685. The case of *BAC*

9

*Home Loans Servicing v. Taylor*, 2013-Ohio-355, 986 N.E.2d 1028 (9th Dist.) has no relevance to the instant matter, as it only concerns the plaintiff's affirmative defense to a foreclosure and has no analysis related to claims against the servicer.

**D.     NATIONSTAR MISINTERPRETS THE C.F.R. AND PROVIDES NO AUTHORITY FOR ITS POSITION THAT COMPLIANCE WITH THE C.F.R. PRECLUDES VIOLATION OF THE SF HANDBOOK AND OTHER STATUTORY LAW**

12 C.F.R. § 1024.41 generally provides procedural guidelines to which a servicer must adhere when a borrower submits a loss mitigation application. Effective August 21, 2021, the CFPB amended 12 C.F.R. § 1024.41 and allowed for an exception to a servicer's obligation to follow the procedures of 12 C.F.R. § 1024.41 for a borrower's submitted loss mitigation application—that is, generally, to obtain and review a complete loss mitigation application for a borrower's eligibility for any and all loss mitigation options available—if a servicer offers and the borrower accepts a loan modification that meets the criteria listed in 12 C.F.R. § 1024.41(c)(2)(vi)(A)(1)-(5), which requires that such an option include a reduction in the principal and interest portion of the borrower's payment. 12 C.F.R. § 1024.41(c)(2)(vi). That is, 12 C.F.R. § 1024.41(c)(2)(vi) merely offers a safe harbor from ongoing compliance with the procedural requirements of 12 C.F.R. § 1024.41 if certain loan modification options are offered and accepted. Such provision does not put any restrictions whatsoever on the terms of any loss mitigation option that may be offered to a borrower—nor does any other provision of 12 C.F.R. § 1024.41.[1]

---

[1] The CFPB restricted servicers' ability to "evade" the requirements of 12 C.F.R. § 1024.41 by offering a loss mitigation application after receipt of an incomplete application. See, 12 C.F.R. § 1024.41(c)(2)(i) ("Except as set forth in paragraphs (c)(2)(ii), (iii), (v), and (vi) of this section, a servicer shall not evade the requirement to evaluate a complete loss mitigation application for all loss mitigation options available to the borrower by offering a loss mitigation option based upon an evaluation of any information provided by a borrower in connection with an incomplete loss mitigation application.") The "safe-harbor" is permitted by offering a loss mitigation option meeting the requirements of 12 C.F.R. § 1024.41(c)(2)(vi) is merely a special circumstance

10

Nationstar has not provided any authority to the contrary. Servicers are permitted to offer loss mitigation options that do not meet the criteria listed in 12 C.F.R. § 1024.41(c)(2)(vi)(A)(1)-(5), it simply means that if they do so, it must continue to comply with the remainder of the obligations imposed by 12 C.F.R. § 1024.41 in relation to any submitted loss mitigation application.

E.     **PLAINTIFF SUFFICIENTLY PLEAD THEIR CLAIMS IN THE COMPLAINT**

In Count One, Plaintiffs seek an order declaring that neither the regulations of the HUD Secretary nor 12 C.F.R. § 1024.41(c)(2)(vi) prohibits a servicer from offering a Recovery Modification if the principal and interest portion of their monthly mortgage payment would not decrease under such a modification. (Doc. 1, ¶ 80). Plaintiffs argue that they should have been offered a Recovery Modification and Nationstar has contended that it was prohibited from offering a Recovery Modification if the principal and interest portion of Plaintiffs' monthly mortgage payment would not decrease under such a modification. (Doc. 1, ¶ 81). Accordingly, a declaration

---

permitted wherein a servicer can evade the requirements of 12 C.F.R. § 1024.41 upon the offer of a certain type of loss mitigation option meeting certain criteria. Logically, this makes sense, as by requiring certain conditions such as a reduction in the profit and loss portion of a modified payment, servicers can only be excused from compliance with the procedural safeguards of 12 C.F.R. § 1024.41 if it offers a modification with approved-of, generally favorable loans, while preventing servicers from the potential of evading the safeguards of 12 C.F.R. § 1024.41 by offering potentially unfavorable loss mitigation options that the CFPB has not approved. The CFPB indicated as much in proposing the rule that would become 12 C.F.R. § 1024.41(c)(2)(vi):

> [T]he Bureau proposes to permit servicers to offer certain streamlined loan modification options made available to borrowers with COVID-19-related hardships based on the evaluation of an incomplete application. Eligible loan modifications must satisfy certain criteria that aim to establish sufficient safeguards to ensure that a borrower is not harmed if the borrower chooses to accept an offer of an eligible loan modification instead of completing a loss mitigation application.

Proposed Rule, Protections for Borrowers Affected by the COVID-19 Emergency under the Real Estate Settlement Procedures Act, Regulation X, CFPB-2021-0006-0001, April 8, 2021.

from this Court will settle this dispute. Nationstar's only argument in favor of dismissing Plaintiffs' declaratory judgment claim is based on decisions from the Fifth Circuit which are in conflict with the Sixth Circuit's opinions in *Mik* and *Monday-West*. *Mik*, 743 F.3d 149, 167; *Monday-West*, 2022 U.S. App. LEXIS 31247, at *17. The existence of a private right of action is irrelevant because the lack of one does not prohibit Plaintiffs' declaratory judgment claim.

In Count Two, Plaintiffs assert that Nationstar violated R.C. 1322.40(C) by engaging in improper and dishonest dealings by failing to provide Plaintiffs with a Recovery Modification and violated R.C. 1322.40(B) by subsequently misrepresenting to Plaintiffs that they did not and could not qualify for the same because the principal and interest portion of their monthly mortgage payment would not decrease under such a modification. (Doc. 1, ¶ 95). Plaintiffs also assert that Nationstar violated R.C. 1322.45(A) by failing to: (1) Follow the Plaintiffs requests for COVID-19 Recovery Options, specifically for a Recovery Modification, pursuant to the applicable guidelines, which resulted in Nationstar improperly denying Plaintiffs for the same; and (2) Act with reasonable skill, care, and diligence and in good faith and with fair dealing through its by failing to provide with a Recovery Modification as required by the SF Handbook and by subsequently misrepresenting to Plaintiffs that they did not and could not qualify for the same because the principal and interest portion of their monthly mortgage payment would not decrease under such a modification. (Doc. 1, ¶¶ 99, 101).

Nationstar responds by citing a case concerning the FDCPA's requirement of a material misrepresentation. There is no material misrepresentation requirement for claims brought pursuant to R.C. 1322.40(C) or R.C. 1322.45. There is, however, a requirement that false or misleading statements in violation of R.C. 1322.40(B) relate to a material fact. In the FDCPA context, "The materiality standard simply means that in addition to being technically false, a statement would

tend to mislead or confuse the reasonable unsophisticated consumer." *Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 326-327 (6th Cir. 2012). Nationstar's false representations and/or misrepresentations that Plaintiffs did not and could not qualify for a Recovery Modification is much more than a technical false statement. Like the mortgage servicer's representation in *Wallace*, Nationstar's representations caused significant delay in the loss mitigation process and resulted in Plaintiffs suffering severe emotional distress. (Doc. 1, ¶¶ 69, 70(d) and (f)).

Again, *Burd* is readily distinguishable as the case concerned a law firm making statements on behalf of its clients in court. *Burd*, 2014 U.S. Dist. LEXIS 195192, at *10-11 ("In these circumstances, to hold that the arguments MDK made were materially false would potentially lead to liability for false statements under § 1692e any time a mortgagee loses on a debatable question of law in a state foreclosure lawsuit."). Nationstar was not making "colorable legal arguments" in any legal proceeding and acceptance of this argument would have the effect of protecting any defendant who made a false or misleading statement from liability, as the party can avoid all liability if it "believed" such statement to be true. Finally, Nationstar wholly fails to address Plaintiffs' claims pursuant to R.C. 1322.45(A).

"The FDCPA defines 'communication' as 'the conveying of information regarding a debt directly or indirectly to any person through any medium.'" *Brown v. Van Ru Credit Corp.*, 804 F.3d 740, 742 (6th Cir. 2015) (quoting 15 U.S.C. § 1692a(2)). "[A] communication need not make an explicit demand for payment in order to fall within the FDCPA's scope; rather, that a communication made specifically to induce the debtor to settle her debt will be sufficient to trigger the protections of the FDCPA." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 385 (7th Cir. 2010). "We draw it at the same place the Seventh Circuit did in *Gburek*: for a communication to be in connection with the collection of a debt, an animating purpose of the communication must

13

be to induce payment by the debtor." *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011). "[A] letter that is not itself a collection attempt, but that aims to make a such an attempt more likely to succeed, is one that has the requisite connection." *Id.*

In *Gburek*, the Court found that a letter with the purpose of encouraging the plaintiff to contact the servicer to discuss debt-settlement options was sufficient to bring her claims within the scope of the FDCPA. *Gburek*, 614 F.3d at 386. Nationstar made false representations in the Denial by falsely stating that Plaintiffs did not and could not qualify for a Recovery Modification because the principal and interest portion of their monthly mortgage payment would not decrease under such a modification. (*See* Doc. 1-4). The Denial was a "communication" that intended to "transfer or deliver" to Plaintiffs "facts that relate to a debt." The first option offered by the Denial is a reinstatement, or a "single lump-sum payment to bring the mortgage current." (Doc. 1-4). The only other options offered by Nationstar were non-retention options which would result in Plaintiffs giving up their home. (Doc. 1-4). Since Nationstar made false statements and the communication is an attempt to induce Plaintiffs to settle their debt, the Denial is properly considered an attempt to collect a debt in violation of the FDCPA.

"In the Sixth Circuit, a false statement that is not deceptive under the objective 'least sophisticated consumer' test is not a violation of the FDCPA." *Turner v. Lerner, Sampson & Rothfuss*, 776 F. Supp. 2d 498, 505 (N.D. Ohio 2011) (quoting *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 401-02 (6th Cir. 1998)); *Misleh v. Timothy E. Baxter & Assocs.*, 786 F. Supp. 2d 1330, 1335 (E.D. Mich. 2011) ("Defendant's challenge to these claims rests exclusively upon a legal proposition that the Court has now rejected — namely, that communications directed solely to a consumer's attorney are not actionable under the FDCPA."); *Fuller v. Lerner, Sampson & Rothfuss*, L.P.A., No. 1:10 CV 2453, 2012 U.S. Dist. LEXIS 135377, at *3 (N.D. Ohio Sep. 21,

2012) ("This Court finds no basis upon which to place a higher standard of review upon the communications in the instant case than that enunciated in *Turner* and *Lewis*."). As such, there is no "competent attorney" standard in the Sixth Circuit. *See Finley v. Ocwen Loan Servicing, LLC*, No. 1:17-CV-02561, 2018 U.S. Dist. LEXIS 59920, at *12 (N.D. Ohio Apr. 9, 2018) ("MDK asks the Court to adopt the 'competent lawyer' standard — a standard that has not been formally adopted by the Sixth Circuit")

## V. CONCLUSION

Plaintiffs have sufficiently pled their claims against Nationstar and the Motion should be denied in its entirety.

**WHEREFORE**, Plaintiffs James W. Groves and Judith Bartell-Groves respectfully request this Court deny Defendant Nationstar Mortgage LLC, d/b/a RightPath Servicing's motion to dismiss in its entirety.

Respectfully submitted,

/s/ Marc E. Dann
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Brian D. Flick (0081605)
Michael A. Smith Jr. (0097147)
**Dann Law**
15000 Madison Ave.
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiffs James W. Groves and Judith Bartell-Groves and the Putative Classes*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 13, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Marc E. Dann
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Brian D. Flick (0081605)
Michael A. Smith Jr. (0097147)
**Dann Law**
*Counsel for Plaintiffs James W. Groves and Judith Bartell-Groves and the Putative Classes*